THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIAM HEIRENS, Defendant-Appellant.

First District (3rd Division)    No. 1—90—2240

Opinion filed March 15, 1995.

---

Rita A. Fry, Public Defender, of Chicago (Stephen Richards, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Kevin Sweeney, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE GREIMAN delivered the opinion of the court:

In 1946 defendant William Heirens pleaded guilty to three murders, among numerous other crimes, and received a life term in prison for each of the three murders, to be served consecutively. Defendant's convictions and continued imprisonment have been the subject of many actions in both State and Federal forums for nearly a half century.

Defendant now appeals the dismissal of his second post-conviction petition and raises numerous substantive issues arguing that (1) he was deprived of his sixth amendment right to counsel due to his trial counsel's alleged conflict of interest, ineffectiveness and disloyalty; (2) he was denied due process and effective assistance of trial counsel by the State's failure to provide defense counsel with an exculpatory statement made by a psychiatrist (referred to as the Grinker diagnosis); (3) he was denied due process by the State's alleged breach of the plea agreement based on his apparent parole ineligibility; (4) he was deprived of his right to a fair trial and impartial jury due to pretrial publicity; (5) he received ineffective assistance of post-conviction counsel, referring to his original post-conviction proceeding in 1952; (6) the trial court in the second post-conviction proceeding erred by not enforcing defendant's subpoena *duces tecum*; and (7) he was denied equal protection and the presumption of innocence on the grounds that he was treated differently from the date of his arrest.

The State disputes the merits of these claims and further maintains that defendant's current post-conviction action is barred by (1) the statutory limitations period for bringing post-conviction proceedings; (2) the statutory restriction allowing a convicted defendant to file only one post-conviction action; (3) *laches*, since all witnesses and attorneys involved in this case are dead; and (4) *res judicata*, since the claims have been decided in one or more of

defendant's numerous prior actions. The State also argues waiver or mootness on certain individual claims.

For all the reasons which follow, we find that defendant's second post-conviction petition is procedurally barred and thus we affirm dismissal of the petition. Moreover, if the petition was not barred, we find defendant's claims meritless.

The facts of this case are set forth in full detail in *People v. Heirens* (1954), 4 Ill. 2d 131, 122 N.E.2d 231, where the Illinois Supreme Court affirmed the dismissal of defendant's first post-conviction petition, and have since been restated in subsequent decisions. Accordingly, only a summary is provided here and additional relevant facts are included where necessary to address an issue.

On June 26, 1946, police officers apprehended defendant, who was then a 17-year-old student at the University of Chicago, shortly after he burglarized an apartment. During the struggle to subdue defendant, one police officer broke three flower pots over defendant's head. Defendant suffered severe injuries and was brought unconscious to a hospital where he remained as a patient for five days.

Over the course of the next five days, the police searched defendant's residence and discovered certain stolen articles. After regaining consciousness, defendant was subjected to repeated and prolonged periods of questioning by the police and assistant State's Attorneys. On June 29, 1946, Dr. Roy Grinker injected defendant with sodium pentothal, commonly known as truth serum, and interviewed him. Defendant alleges that after the drug-induced interview, Dr. Grinker told the State's Attorney that defendant was a dissociated psychotic schizophrenic (referred to as the Grinker diagnosis). Eventually defendant disclosed information about burglaries, other crimes and one murder but attributed the crimes to a friend named George Merman. When asked to describe George, defendant described himself exactly.

In July 1946 after further investigation, the issuance of formal indictments, admissions by defendant to his counsel and parents, and discussions concerning defendant's mental state, defendant and his parents instructed defendant's attorneys to negotiate a plea with the State. Defendant eventually agreed to make a statement because he did not wish to risk being sentenced to death in the electric chair.

On September 4-5, 1946, following plea negotiations, a two-day guilty plea proceeding was held where the State presented evidence of defendant's guilt in the form of numerous witnesses, exhibits, stipulations, a lengthy report prepared by three psychiatrists as to his fitness to stand trial, and statements and confessions by defendant.

When the State rested its case, defense counsel offered nothing in mitigation but made a statement to which defendant now objects.[1]

Defendant pleaded guilty to the murders of three victims, *i.e.*, 43-year-old Josephine Ross (June 5, 1945), 33-year-old Frances Brown (December 10, 1945), and six-year-old Suzanne Degnan (January 6, 1946), for which he received three consecutive terms of life in prison for the three murders.

In addition, defendant, by agreement, pleaded guilty to 26 other charges including burglaries, robberies and assaults. For these crimes defendant received sentences ranging from one year to life, with the sentences to be concurrent with each other but consecutive to the sentences for murder.

During the nearly 50 years that followed, defendant's convictions were the subject of numerous post-conviction proceedings and appeals. A list of pertinent decisions follows:

(a) In July 1952, defendant filed a petition under the Post-Conviction Hearing Act. (Ill. Rev. Stat. 1953, ch. 38, par. 826.) In November 1952, nearly 40 witnesses testified at a nine-day evidentiary hearing. Post-conviction relief was denied by the trial court and the decision was affirmed by the Illinois Supreme Court, which took defendant's case on direct appeal and decided the substantive issues raised. (*Heirens*, 4 Ill. 2d 131.) Thereafter the United States Supreme Court denied defendant's petition for *certiorari*. *Heirens v. Illinois* (1955), 349 U.S. 947, 99 L. Ed. 1273, 75 S. Ct. 876.

(b) In May 1964 defendant initiated the next proceeding by filing a *pro se* petition for delayed writ of error to the Illinois Supreme Court asserting that the trial court had failed to afford him a hearing to determine his competency before it accepted his guilty plea. This petition was summarily dismissed by the Illinois Supreme Court (*People v. Heirens* (May 21, 1964), No. 3552) and then *certiorari* was denied by the United States Supreme Court (*Heirens v. Illinois* (1964), 379 U.S. 868, 13 L. Ed. 2d 71, 85 S. Ct. 140).

---

[1] Defense counsel stated:

"I might state to your Honor that our thought at the outset was never one of co-operation. We had a duty to the accused and to him alone. I did not see at the start where we had any public duty and I did not so recognize it.

However, when we became convinced that the State had a prima facie case where there was sufficient evidence to require him to take the stand and to relate truthfully his complicity in this crime, our duty at that time required that we in no manner assist him in defeating justice, and we, accordingly, at that time communicated with the State's Attorney and arranged for what we believed to be fair punishment."

(c) In April 1967 the United States Court of Appeals, Seventh Circuit, considered defendant's appeal from the district court's denial of his Federal *habeas corpus* petition and found that the writ of error proceeding in Illinois was invalid because of the failure of the State to provide appointed counsel and that defendant was entitled to a full hearing in the Illinois Supreme Court aided by such counsel. *United States ex rel. Heirens v. Pate* (7th Cir. 1967), 401 F.2d 147.

(d) In 1967, the Illinois Supreme Court, in response to the Federal court of appeals, appointed counsel for defendant, found that it had no jurisdiction to decide matters raised in the pending Federal *habeas corpus* petition, held that the issues adjudicated in the first post-conviction proceeding were not open to review, rejected contentions lacking factual support in the record, affirmed the imposition of consecutive sentences as proper and denied defendant's motion for a writ of error. (*People v. Heirens* (1967), 38 Ill. 2d 294, 230 N.E.2d 875.) For the third time, the United States Supreme Court denied review of defendant's case. *Heirens v. Illinois* (1968), 390 U.S. 1044, 20 L. Ed. 2d 306, 88 S. Ct. 1644.

(e) In 1968 the United States Court of Appeals, Seventh Circuit, affirmed the district court's denial, without a hearing, of defendant's *habeas corpus* petition. (*United States ex rel. Heirens v. Pate* (7th Cir. 1968), 405 F.2d 449, *cert. denied* (1969), 396 U.S. 853, 24 L. Ed. 2d 102, 90 S. Ct. 113.) The court noted that before pleading guilty, defendant was found competent by a panel of three psychiatrists and the trial court was therefore not required to impanel a jury to conduct a competency hearing. (*Heirens*, 405 F.2d at 450-51.) The Federal court further rejected defendant's claim that the State's Attorney withheld from defense counsel and from the trial court the observation made by Dr. Grinker on June 29, 1946, after injecting defendant with sodium pentothal that defendant was a dissociated psychotic schizophrenic. (*Heirens*, 405 F.2d at 451.) The court further determined that defendant waived an insanity defense, received the exact sentences for which he had bargained and could not claim that the publicity about the crimes was responsible for the guilty pleas. (*Heirens*, 405 F.2d at 451-52.) Defendant's implication that the guilty pleas would not have been made if his counsel were fully loyal was also rejected by the Federal court "[s]ince trial counsel's decision to recommend entering guilty pleas was in [defendant's] best interest." *Heirens*, 405 F.2d at 453.

(f) In 1965 defendant was placed on institutional (*i.e.*, in-prison) parole for his first life sentence. In 1966 defendant was discharged from parole on his first life sentence and then began serving his

second consecutive life sentence. Since that time, defendant has instituted numerous hearings in which parole was repeatedly denied and also commenced many legal proceedings regarding the denials of parole.

(g) In March 1975 the Federal district court dismissed defendant's complaint against the Illinois Parole and Pardon Board (Board) seeking a declaratory judgment that his constitutional rights had been violated by the Board's refusal to grant him an institutional parole and contesting the recently enacted statutory basis used to compute his remaining prison terms in the form of an aggregate sentence rather than sequential service. (*Heirens v. Longo* (N.D. Ill. 1975), No. 74 C 2732; see Ill. Rev. Stat. 1973, ch. 38, par. 1003—3—3 (aggregated consecutive sentences effective January 1, 1973); Ill. Rev. Stat. 1973, ch. 38, par. 102—16 (abandoned, in effect, the unwritten, nonstatutory practice of institutional paroles).) The district court observed that defendant was denied noninstitutional (*i.e.*, nonprison) parole on three occasions (January 4 and November 29, 1973, and October 24, 1974) and held that defendant's constitutional arguments regarding the application and validity of the new Illinois law should not be considered by a Federal court before the issue is decided in the State court. Defendant's motion to vacate this March 1975 decision of the Federal district court was later denied in May 1975.

(h) In 1978 the Illinois Supreme Court denied defendant's petition for *mandamus* which sought to treat his remaining prison terms sequentially. *Heirens v. Irving* (October 11, 1978), No. 6611.

(i) In 1980 the Illinois Appellate Court, Fifth District, reviewed defendant's *habeas* proceeding in which defendant asserted that the application of parole statutes enacted subsequent to his confinement was *ex post facto*. (*People ex rel. Heirens v. Mizell* (1980), 89 Ill. App. 3d 1208, 417 N.E.2d 277 (an unpublished Rule 23 order).) The fifth district denied relief and the United States Supreme Court denied defendant's petition for *certiorari* (*Heirens v. Mizell* (1981), 451 U.S. 940, 68 L. Ed. 2d 328, 101 S. Ct. 2022).

(j) In 1982, the United States Court of Appeals, Seventh Circuit, upheld the denial of parole in an unpublished decision and the United States Supreme Court later denied defendant's petition. *Heirens v. Housewright* (7th Cir. 1982), 688 F.2d 841, *cert. denied* (1982), 459 U.S. 992, 74 L. Ed. 2d 389, 103 S. Ct. 351.

(k) In April 1983 a Federal magistrate issued an order for the release of defendant on parole. (*Heirens v. Mizell* (7th Cir. 1984), 729 F.2d 449, 454.) On appeal in 1984 the United States Court of Appeals, Seventh Circuit, reversed the magistrate's determination and denied defendant's petition for a writ of *habeas corpus*. *Heirens,* 729 F.2d at 469, *cert. denied* (1984), 469 U.S. 842, 83 L. Ed. 2d 85, 105 S. Ct. 147.

(l) In 1984 defendant's continued imprisonment was upheld in an unpublished decision by the Seventh Circuit Court of Appeals and defendant's petition to the United States Supreme Court was again denied. *United States ex rel. Heirens v. Irving* (7th Cir. 1984), 732 F.2d 159, *cert. denied* (1984), 469 U.S. 868, 83 L. Ed. 2d 144, 105 S. Ct. 213.

(m) In 1985 the order to deny defendant *habeas corpus* relief following the denial of parole was affirmed by the Appellate Court, Fifth District. (*People ex rel. Heirens v. Greer* (1985), 135 Ill. App. 3d 60, 481 N.E.2d 877.) The appellate court rejected as meritless defendant's contention that the Parole Board's consideration of the circumstances of the first murder in effect meant that his continued imprisonment was based on the first life sentence from which he had been previously discharged (1966). *Heirens*, 135 Ill. App. 3d at 61-62.

(n) In 1987 the order to dismiss defendant's complaint for *mandamus* was affirmed by the Appellate Court, Fifth District. (*Heirens v. Prisoner Review Board* (1987), 162 Ill. App. 3d 762, 516 N.E.2d 613, *appeal denied* (1988), 119 Ill. 2d 557, 522 N.E.2d 1244.) The appellate court rejected defendant's contention that his consecutive life sentences were subject to a maximum 80-year aggregate term under the Unified Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, pars. 1005—8—4(c)(1), (e)(1)) and found that defendant was not entitled to a fixed release date. *Heirens*, 162 Ill. App. 3d at 766-67.

(o) In 1988 defendant's petition to file a State *habeas corpus* action alleging a claim of ineffective assistance of counsel in the Illinois Supreme Court was denied. *People ex rel. Heirens v. Mizell* (January 29, 1988), No. 7650, *cert. denied* (1988), 488 U.S. 830, 102 L. Ed. 2d 61, 109 S. Ct. 84.

In February 1989, defendant filed another *pro se* petition for post-conviction relief. A supplemental petition for post-conviction relief was later filed by private counsel and an assistant public defender. The second post-conviction petitions are the subject of the present appeal.

In motions to dismiss, the State asserted that defendant's allegations failed to raise any constitutional questions within the purview of the Post-Conviction Hearing Act, were insufficient to require a hearing and were barred by *res judicata*, waiver and the statute of limitations set forth in the Post-Conviction Hearing Act. The State further contended that defendant's claim of ineffective assistance of counsel, even under present standards, lacks merit.

Thereafter, defendant issued five subpoenas *duces tecum* to the Chicago police department, three of which sought "[a]ll notes, memos,

files, records of any nature, including 'Street Files' for the case[s] involving the" murders of Josephine Ross in June 1945, Frances Brown in December 1945 and Suzanne Degnan in January 1946. Two additional subpoenas *duces tecum* requested "fingerprint reports, latent fingerprints samples, or other similar materials concerning the fingerprints/recovered from a ransom note, involving the murder of Susan Degnan on January 7, 1946," and "from the murder of Francis Brown on December 10, 1945." The State filed a motion to quash the subpoenas.

At the April 25, 1990, court hearing, the trial court decided to neither quash nor enforce defendant's subpoenas until after determining whether defendant's petition had merit. The trial court reasoned that if defendant was found to have stated a valid cause of action under the Post-Conviction Hearing Act, then the production of material necessary to prepare for an evidentiary hearing would be considered.

On June 11, 1990, the court provided a detailed ruling dismissing defendant's petitions for post-conviction relief "finding that petitioner's claims are without merit, and are legally insufficient to warrant an evidentiary hearing, much less ultimate relief."

We first address the four procedural bars to defendant's second post-conviction petition: (1) the five-year limitations period in the Post-Conviction Hearing Act; (2) the statutory restriction in the Post-Conviction Hearing Act which entitles a convicted defendant to only one post-conviction action; (3) *laches*; and (4) the impact of the doctrine of *res judicata.*

As to the first procedural bar, the five-year time limit designated in the Post-Conviction Hearing Act which was passed in 1949 applies in this case and thus the time for the filing of a post-conviction action by defendant on his 1946 conviction expired in 1952. As previously noted, defendant filed such petition in July 1952 and was afforded a lengthy, nine-day evidentiary hearing.

The Post-Conviction Hearing Act provided:

> "No proceeding under this Act shall be commenced more than five years after rendition of final judgment, or more than three years after the effective date of this act, whichever is later, unless the petitioner alleges facts showing that the delay was not due to his culpable negligence." (1949 Laws 722, § 1 (later codified at Ill. Rev. Stat. 1953, ch. 38, par. 826).)

Since defendant was convicted in 1946, he had three years from the date the statute was enacted in 1949 to commence a post-conviction proceeding, *i.e.,* 1952.

Subsequently, the limitations provision was amended three times. The time limit was increased from 5 to 20 years in 1965, reduced to 10 years in 1984, and reduced again to three years in 1992. (725 ILCS Ann. 5/122—1, Historical & Statutory Notes, at 243 (Smith-Hurd 1992).) The 1965 amendment which extended the limitation period from 5 years to 20 years did not revive rights already terminated. (*People v. Streeter* (1970), 45 Ill. 2d 10, 256 N.E.2d 830 (1946 conviction at issue); see also *People v. Thomas* (1970), 45 Ill. 2d 68, 256 N.E.2d 794.) On the other hand, the shortening of the time limit for filing a post-conviction petition from 10 years to 3 years under the amendment effective January 1, 1992, applies retroactively to final judgments rendered before the effective date. *People v. Johnson* (1992), 232 Ill. App. 3d 882, 598 N.E.2d 276, citing *People v. Bates* (1988), 124 Ill. 2d 81, 529 N.E.2d 227.

■ In the present case, defendant was convicted in 1946 and filed the petition at issue in 1989, *i.e.*, 43 years after his conviction. Under any limitations provision stated above, defendant's petition on its face would be barred.

Notwithstanding the time limitation imposed for filing a post-conviction petition, the statute always included an exception to the limitations period to allow a petitioner to file a post-conviction action after the limitations period has expired where the delay "was not due to his [the petitioner's] culpable negligence." The petitioner has the burden to show that the delay in filing a post-conviction petition was not due to his culpable negligence. *People v. Harrison* (1975), 32 Ill. App. 3d 641, 336 N.E.2d 143.

In *People v. Reed* (1969), 42 Ill. 2d 169, 246 N.E.2d 238, the Illinois Supreme Court held that the petition was not timely filed where the petitioner made no factual allegations showing that failure to file the petition until four years after the statutory five-year filing period had expired and until more than four years after completion of Federal court proceedings.

Even where the defendant was not advised of his right to appeal, did not know that he could appeal and had no money for an attorney, the defendant could not avoid a claim of culpable negligence where the petitioner filed his *pro se* post-conviction petition 15 years after his conviction. *People v. Harrison* (1975), 32 Ill. App. 3d 641, 336 N.E.2d 143 (dismissal of petition without an evidentiary hearing was proper); see also *People v. Montgomery* (1970), 45 Ill. 2d 94, 256 N.E.2d 802 (petition was properly dismissed where it was filed long after the five-year limitations period even though psychiatric reports on the prisoner's condition during incarceration generally indicated a condition of mental disturbance).

Defendant in the instant case has not presented sufficient facts to demonstrate that his delay in filing his second post-conviction petition was not due to his culpable negligence where his numerous post-conviction appeals and petitions in both Federal and State courts prior to the filing of the current petition suggest that he was, at the minimum, not unfamiliar with legal process.

To evade the result apparent from the application of the limitations period for post-conviction petitions, defendant now argues that the statute of limitations for post-conviction petitions is not jurisdictional and thus is subject to the doctrine of judicial estoppel and, in turn, the State is barred from raising it. We disagree.

Both parties agree that a distinction exists between statutes of limitations and time limitations created by statutes. Moreover, both parties rely on *Fredman Brothers Furniture Co. v. Department of Revenue* (1985), 109 Ill. 2d 202, 486 N.E.2d 893.

In *Fredman Brothers* the Illinois Supreme Court explained that a statute of limitations fixes the time within which a remedy for a particular wrong may be sought. On the other hand, where a statute creates a substantive right unknown at common law and provides the time within which the action must be commenced, the issue is one of jurisdiction. (*Fredman Brothers*, 109 Ill. 2d at 209-10.) In *Fredman*, the court determined that "[i]n the exercise of special statutory jurisdiction, if the mode of procedure prescribed by statute is not strictly pursued, no jurisdiction is conferred on the circuit court." (*Fredman Brothers*, 109 Ill. 2d at 210.) Accordingly, the statute is jurisdictional and cannot cure defendant's failure to comply with its terms.

The second procedural bar asserted by the State is that a convicted defendant is entitled to only one post-conviction action.

Section 122—3 of the Post-Conviction Hearing Act is entitled "Waiver of claims" and provides:

> "Any claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." 725 ILCS 5/122—3 (West 1992) (the single-petition provision has been in effect since 1949; see historical and statutory notes).

The Illinois Supreme Court explained that the Act intends to provide for the filing of a single post-conviction petition only.

> "That the Post-Conviction Hearing Act [citation] contemplates the filing of only one post-conviction petition is made clear by section 122—3 ***. [Citation.] Consistent with that provision, this court has held that a ruling on a post-conviction petition has *res judicata* effect with respect to all claims that were raised or could have been raised in the initial petition." *People v. Free* (1988), 122 Ill. 2d 367, 375-76, 522 N.E.2d 1184 (the court precluded the defendant from bringing a second post-conviction petition).

■ Relying on *Free*, the defendant's second post-conviction petition was properly dismissed where he waived any claim not raised in his prior petition and the denial of his original petition was *res judicata* as to any claim raised there. *People v. Mackey* (1992), 229 Ill. App. 3d 784, 788, 595 N.E.2d 133.

Moreover, the plain error rule (134 Ill. 2d R. 615(a)) may not be invoked under the Post-Conviction Hearing Act. *People v. Owens* (1989), 129 Ill. 2d 303, 544 N.E.2d 276.

The narrow exception to the single-filing rule allows multiple post-conviction petitions where "the proceedings on the original petitions were deficient in some fundamental way." *Free*, 122 Ill. 2d at 376.

The exception to the statutory restriction of a single post-conviction action does not apply in the present case where defendant's original post-conviction petition in 1952 was not "deficient in some fundamental way," since an extensive evidentiary hearing was conducted lasting nine days which included testimony from nearly 40 witnesses and raised virtually the same claims as are before us.

Although the State next argues that the petition is further barred by *laches, laches* may usually be invoked only where the moving party is guilty of a lack of diligence in asserting his claim and there will be prejudice to the other party resulting from the delay. *Meyers v. Kissner* (1992), 149 Ill. 2d 1, 594 N.E.2d 336; *Tully v. State* (1991), 143 Ill. 2d 425, 574 N.E.2d 659.

*Laches* is particularly applicable where justice or the relief sought is impeded by the death of a party to the transaction in question (*Bobin v. Tauber* (1976), 45 Ill. App. 3d 831, 837, 360 N.E.2d 368, citing *Pyle v. Ferrell* (1958), 12 Ill. 2d 547, 147 N.E.2d 341), the death of witnesses (*Equal Employment Opportunity Comm'n v. Vucitech* (7th Cir. 1988), 842 F.2d 936), or the loss or the obscuration of the evidence of matters in dispute (*Monroe v. Civil Service Comm'n* (1965), 55 Ill. App. 2d 354, 204 N.E.2d 486). Furthermore, denial of a post-conviction petition was found proper where the defendant complained of improper conduct on the part of his retained counsel who had died. *People v. Nelson* (1969), 42 Ill. 2d 172, 246 N.E.2d 244.

■ While we cannot say that the defendant has been timid in asserting his rights over the last 49 years, all of the witnesses and attorneys in the original case appear to be long dead. We are not instructed as to how a court would now determine defendant's mental condition at the time of the commission of these crimes.

Since the facts and circumstances of each particular case govern whether *laches* applies (*Hannigan v. Hoffmeister* (1992), 240 Ill. App. 3d 1065, 1074, 608 N.E.2d 396), it is difficult to imagine a case where

the facts are more remote and where the State might be more prejudiced by the passage of time.

The fourth preclusion issue advanced by the State is the doctrine of *res judicata*, which bars reconsideration of an issue which was raised or could have been raised to a court of competent jurisdiction. (*E.g., People v. Collins* (1992), 153 Ill. 2d 130, 135, 606 N.E.2d 1137.) We will consider the impact of *res judicata* on the several issues raised by defendant's petition.

Defendant first asserts that he was deprived of his right to counsel because his counsel was allegedly conflicted, ineffective and disloyal. He argues that his counsel advanced the public interest over defendant's interest and worked actively for the prosecution and thus was ineffective *per se.* Defendant further argues that, absent his counsel's actions, he would not have pled guilty.

■ We first note that in 1968 the seventh circuit addressed and rejected this issue (*Pate*, 405 F.2d 449), and in 1954 the Illinois Supreme Court addressed and rejected defendant's arguments regarding his trial counsel (*Heirens*, 4 Ill. 2d 131). Accordingly, this claim is barred by the doctrine of *res judicata.*

Notwithstanding the two prior decisions, an exception to the rule of *res judicata* may allow a claim to be relitigated where predicated on fundamental fairness. (*People v. Kubik* (1991), 214 Ill. App. 3d 649, 658-59, 573 N.E.2d 1337, 1343, citing *Teague v. Lane* (1989), 489 U.S. 288, 103 L. Ed. 2d 334, 109 S. Ct. 1060.) However, in *Kubik*, this court concluded that a United States Supreme Court decision regarding the confrontation clause and right of cross-examination (*Cruz v. New York* (1987), 481 U.S. 186, 95 L. Ed. 2d 162, 107 S. Ct. 1714) should be applied retroactively, but ultimately held that the error was harmless.

Defendant maintains, however, that this claim is not subject to *res judicata*, is not untimely and could not have been advanced earlier in his first post-conviction petition because his present arguments are predicated upon later-decided cases which changed the standards for assessing effective assistance of counsel, relying on *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (established the two-pronged test for ineffective assistance of counsel); *United States v. Cronic* (1984), 466 U.S. 648, 80 L. Ed. 2d 657, 104 S. Ct. 2039; *Cuyler v. Sullivan* (1980), 446 U.S. 335, 64 L. Ed. 2d 333, 100 S. Ct. 1708; *People v. Royse* (1983), 99 Ill. 2d 163, 457 N.E.2d 1217.

In *Cuyler*, the Supreme Court held that the standards for effective representation by privately retained attorneys were the same as for appointed counsel. In *Strickland*, the United States Supreme

Court enunciated a two-pronged test to determine ineffective assistance of counsel: (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that counsel's substandard representation so prejudiced the defense as to deny the defendant a fair trial.

We believe that defendant did not need the 1980 *Cuyler* decision upon which to base the conflict of interest issue. Even if his claim was based upon *Cuyler*, the record does not disclose any reason to wait until at least eight years after *Cuyler* to file.

Moreover, we need not decide whether or not *Strickland* applies retroactively on collateral review because even if we apply the *Strickland* standard, defendant's petition must fail.

Even if no bar to defendant's second post-conviction petition exists and even if the case law subsequent to the 1968 Federal decision and the 1954 Illinois Supreme Court decision is applied, defendant's trial counsel's conduct under any standard could not be found ineffective in light of the evidence against defendant and the real threat of the imposition of the death penalty.

Next, defendant asserts that the State deprived him of due process and effective assistance of counsel by failing to inform his counsel of the Grinker diagnosis, referring to the alleged diagnosis of defendant by Dr. Roy Grinker, who injected sodium pentothal into defendant after his arrest as part of the interrogation process.

At the 1952 hearing on defendant's original post-conviction petition, Dr. Grinker testified that after the drug-induced examination, he told the State's Attorney that defendant "was a disassociated psychotic schizophrenic." However, it should be noted that it was disputed whether or not Grinker recorded such a diagnosis in 1946.

Defendant is attempting to relitigate an issue considered and rejected in *Pate* (405 F.2d at 451). The *Pate* opinion particularly found that "Grinker never reported on petitioner's September 1946 competence to stand trial or to plead guilty or whether he knew right from wrong under the then Illinois sanity test." (*Pate*, 405 F.2d at 451.) Thus, the issues of the *Pate* decision are *res judicata*.

Moreover, the record does not contain the alleged Grinker diagnosis, and even if such report existed, it does not necessarily confirm that defendant was insane at the time of the commission of the crimes. A similar issue was raised in *People v. Henderson* (1990), 142 Ill. 2d 258, 568 N.E.2d 1234, where the supreme court rejected the defendant's claim of ineffective counsel although the defendant's mental state was not raised after a social worker reported that the defendant might have suffered psychological trauma as a child and that a psychiatrist should be engaged by the defense. Here, defen-

dant has not even provided us with an affidavit or other evidence that an evidentiary hearing would yield credible information as to defendant's mental state in the winter of 1946. See *People v. Brisbon* (1995), 164 Ill. 2d 236.

Accordingly, even if we did not believe the issue resolved by principles of *res judicata*, we would affirm the trial court because of a paucity of allegations in his petition as to his then mental condition. No psychiatrist then or now has been willing to testify to defendant's insanity.

Next, defendant claims that he was denied due process of law by the State's alleged failure to live up to the original terms and conditions of the plea agreement. Defendant relies on legislative changes in parole laws and the aggregation of his consecutive sentences.

With respect to this claim, we find that (1) the issue appears to be moot until the year 2007, which is the year defendant would first be eligible for parole under the law of 1946; (2) this issue is also *res judicata*; (3) defendant has received more than he bargained for since he already has had parole hearings; and (4) the record does not reveal that the State ever promised defendant in 1946 that he would ever be paroled. See *Mizell*, 729 F.2d 449 (held that defendant should be denied parole release).

Next defendant asserts that he was deprived of his right to a fair trial and impartial jury due to extensive pretrial publicity. This claim is barred by *res judicata* by the 1954 decision of the Illinois Supreme Court (*Heirens*, 4 Ill. 2d at 142) and the 1968 decision by the seventh circuit (*Pate*, 405 F.2d at 452).

Next, referring to his original post-conviction proceeding in 1952, defendant asserts that his counsel was ineffective because he "failed to raise the issue of defendant's mental capacity at the time of the crimes." Defendant also apparently argues that his counsel was ineffective because a sanity hearing was not held.

Although we believe this issue is *res judicata*, having been considered in *Pate* (405 F.2d 449), both the United States Supreme Court and the Illinois Supreme Court have held that a defendant may not properly assert a claim of ineffective assistance of post-trial counsel. *Coleman v. Thompson* (1991), 501 U.S. 722, 115 L. Ed. 2d 640, 111 S. Ct. 2546; *People v. Davis* (1993), 156 Ill. 2d 149, 619 N.E.2d 750.

Next, defendant asserts that the trial court erred in refusing to enforce his subpoena *duces tecum* which requested the fingerprint evidence from two crimes for which he was convicted, *i.e.*, the murder cases of Frances Brown and Suzanne Degnan.

■ Generally, the trial court has discretion on whether or not to allow discovery in a post-conviction proceeding. See *People ex rel. Da-*

*ley v. Fitzgerald* (1988), 123 Ill. 2d 175, 182, 526 N.E.2d 131 ("civil discovery rules have no application to post-conviction proceedings"; the unique character of post-conviction proceedings).

Moreover, the ruling, in fact, appears quite logical under the facts of the present case since the trial court first determined the State's motion to dismiss defendant's petition and then could have considered the discovery issue had defendant prevailed and an evidentiary hearing been granted. In addition, the trial court failed to rule on the subpoena and a party generally waives any error if the complaining party fails to obtain a ruling on the issue.

Finally, defendant asserts that he has been denied the fundamental fairness that is required under the equal protection and due process clauses of the United States Constitution. Defendant argues that (1) he has been treated differently from the date of his arrest; (2) he was denied the presumption of innocence; and (3) he was not proved guilty beyond a reasonable doubt because that option was not realistically open to him.

■ We reject defendant's equal protection claim since he has failed to carry his burden of showing that he was treated differently than a class of persons in a similar situation, *i.e.*, other multiple murderers charged with notorious crimes or even other prisoners.

Defendant concedes in his brief that he "waived all constitutional protections to save his life." This waiver seems to be the crux of the entire case since the plea negotiations were intended to accomplish that exact result, *i.e.*, to save his life by avoiding the death penalty. As stated by the seventh circuit in *Pate*:

> "Within a month of his arrest, with the knowledge of the State's case against him and with the advice of his parents and counsel, petitioner decided to plead guilty in order to avoid the electric chair, which was his objective throughout." *Pate*, 405 F.2d at 452.

The intervening 49 years have apparently dimmed defendant's memory as to the exigency of a guilty plea to avoid capital punishment. To understand the real core of this case, one must understand the significance of a guilty plea in return for the State not seeking the death penalty in 1946. In the past 15 years (1979-1994), the State executed two inmates subject to the death penalty. On the other hand, in the 15 years before defendant pled guilty (1931-1946), the State executed 70 convicts.[2] Capital punishment was a very real probability for this defendant.

---

[2] Statistics provided by the Illinois Department of Corrections as compiled in *Legal Homicide: Death as Punishment in America, 1864-1982* (1984), Northeastern University Press, Boston.

Fortunately, we are not called upon to determine whether defendant's continued incarceration protects society or stands as a deterrent to other such crimes. Both the criminal justice system and the world at large have changed since the prison doors shut upon this defendant. Perhaps the saddest commentary is that we are not certain that his crimes, were they committed today, would receive the same attention and notoriety.

We do not see anything in this record that would compel us to remand for an evidentiary hearing nor do we believe that such a hearing would yield any results for this defendant. For almost half a century, William Heirens has sought recourse from the circuit court of Cook County, several districts of the Illinois Appellate Court, the Illinois Supreme Court, the United States District Court for the Northern District of Illinois, the Seventh Circuit United States Court of Appeals and, on several occasions, the United States Supreme Court. He has been afforded all of the safeguards that our system can offer.

To paraphrase the trial court, litigation has a beginning and, of necessity, an end. The end for William Heirens has long since passed as far as these claims are concerned.

We affirm the circuit court in the dismissal of defendant's post-conviction petition.

Affirmed.

TULLY and CERDA, JJ., concur.