(No. 81259.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. JUAN CABALLERO, Appellant.

*Opinion filed December 4, 1997.*

BILANDIC, J., joined by MILLER and HEIPLE, JJ., dissenting.

Cynthia Giacchetti, of the Office of the State Appellate Defender, of Chicago, for appellant.

James E. Ryan, Attorney General, of Springfield, and Richard A. Devine, State's Attorney, of Chicago (Arleen C. Anderson, Assistant Attorney General, of Chicago, and Renee Goldfarb, Kenneth T. McCurry and Kim A. Novi, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HARRISON delivered the opinion of the court:

Defendant, Juan Caballero, appeals from an order of the circuit court of Cook County dismissing, without an evidentiary hearing, his petition for post-conviction relief (725 ILCS 5/122—1 *et seq.* (West 1992)) and relief from judgment (735 ILCS 5/2—1401 (West 1992)). Because defendant was sentenced to death for the underlying murder convictions, the present appeal lies directly to this court. 134 Ill. 2d R. 651(a).

Early on the morning of February 25, 1979, the bodies of three teenage males, Michael Salcido, Arthur Salcido, and Frank Mussa, were discovered in a car in a Chicago alley. In 1980, a jury found defendant guilty on

charges of murder, unlawful restraint, and armed violence with respect to each of the three victims. On direct appeal, this court affirmed defendant's convictions and death sentence. *People v. Caballero*, 102 Ill. 2d 23 (1984).

Defendant filed a petition for post-conviction relief alleging, *inter alia*, that he was denied effective assistance of counsel at his capital sentencing hearing. The circuit court dismissed the petition without an evidentiary hearing. On appeal, this court held that the allegations made a substantial showing of constitutional rights deprivation and remanded the cause for an evidentiary hearing. *People v. Caballero*, 126 Ill. 2d 248 (1989). After a hearing, the circuit court denied defendant post-conviction relief based on ineffective assistance of counsel at sentencing and this court affirmed. *People v. Caballero*, 152 Ill. 2d 347 (1992).

On October 29, 1993, defendant filed a petition for post-conviction relief and relief from judgment based on the unconstitutional disparity of his death sentence, and later amended the petition to include violation of his due process right to "reverse-*Witherspoon*," or "life qualify," the jury. The State moved to dismiss defendant's petition. On May 29, 1996, after oral argument on the State's motion, the circuit court dismissed the petition and this appeal followed. The facts of this case are adequately set forth in our opinion on defendant's direct appeal and will not be repeated here.

Initially, we note that while defendant alternatively argues that he is entitled to relief from judgment pursuant to section 2—1401 of the Civil Practice Law (735 ILCS 5/2—1401 (West 1992)), where a section 2—1401 petition is filed beyond two years after the judgment was entered, it cannot be considered. 735 ILCS 5/2—1401(c) (West 1992); see also *People v. Logan*, 49 Ill. App. 3d 787, 790 (1977), *aff'd*, 72 Ill. 2d 358 (1978). This court

has held that the two-year limitation mandated by section 2—1401 and its predecessor, section 72 (Ill. Rev. Stat. 1975, ch. 110, par. 72), must be adhered to in the absence of a clear showing that the person seeking relief is under legal disability or duress or the grounds for relief are fraudulently concealed. *Crowell v. Bilandic*, 81 Ill. 2d 422, 427 (1980); *People v. Berland*, 74 Ill. 2d 286, 317 (1978). Moreover, the fact that a post-judgment motion or an appeal may be pending does not serve to toll the period of limitation. See *Sidwell v. Sidwell*, 127 Ill. App. 3d 169, 174 (1984).

Defendant's section 2—1401 petition was filed 13 years after the judgment of conviction was entered and sentence imposed in 1980, and he does not contend that any of the grounds for tolling the limitations period exist. Therefore, section 2—1401 is not available as a remedy. Although the circuit court did not state its reasoning for dismissing that portion of defendant's petition, we may affirm for any reason warranted by the record, regardless of the reasons relied on by the lower court. *People v. Nash*, 173 Ill. 2d 423, 432 (1996).

The State contends that the circuit court also properly dismissed defendant's petition for post-conviction relief because, as his second, it is procedurally barred. It is true that the Post-Conviction Hearing Act (Act) contemplates the filing of only one petition, and "a ruling on a post-conviction petition has *res judicata* effect with respect to all claims that were raised or could have been raised in the initial petition." *People v. Free*, 122 Ill. 2d 367, 375-76 (1988); accord *People v. Flores*, 153 Ill. 2d 264, 273-74 (1992).

> "The filing of successive post-conviction petitions sets up two competing interests. On the one hand, there is the State's interest in providing a forum for the vindication of the petitioner's constitutional rights. On the other hand, the State has a legitimate interest in the finality of criminal litigation and judgments. \*\*\*

*　*　*

Where, however, the claimed error is one which could not have been presented in an earlier proceeding, procedural bars may be ineffectual in bringing about that finality which ordinarily follows direct appeal and the first post-conviction proceeding. In such cases, there is the potential that a second or subsequent post-conviction petition may be filed *** ." *Flores*, 153 Ill. 2d at 274-75.

Defendant's sentence disparity claim constitutes one such case.

Defendant and three codefendants have been convicted of the triple homicide involved herein. Defendant and codefendant Luis Ruiz were tried in 1980 before one judge supervising two separate juries, and, following separate sentencing hearings, both men were sentenced to death. In his second post-conviction petition, defendant claims that the disparity between his death sentence and the prison sentences of codefendants Placido LaBoy and Nelson Aviles violates defendant's constitutional rights. Defendant has supplemented his petition with portions of the circuit court records of Aviles and LaBoy, which indicate that Aviles had been a fugitive from 1979 until 1988. After Aviles was arrested in California, he agreed to testify against LaBoy and plead guilty to the murders in exchange for an agreed recommendation by the State of a 40-year sentence. In February 1992, Aviles testified at LaBoy's jury trial and, although the State sought the death penalty, the jury concluded that a sentence other than death should be imposed. Accordingly, LaBoy was sentenced to three consecutive natural-life terms of imprisonment. In March 1992, Aviles plead guilty and received concurrent sentences of 40 years on each of the three murder counts.

LaBoy and Aviles were sentenced during the pendency of defendant's appeal from the circuit court's denial of his first post-conviction petition. On April 3,

1992, defendant filed with this court a "Motion to Take Judicial Notice of the Trial of Codefendants and to Raise the Additional Issue of Proportionality and to Submit Additional Authority." Defendant's motion was denied on May 12, 1992. This court's opinion affirming denial of defendant's first post-conviction petition was filed October 15, 1992, and rehearing was denied on December 7, 1992.

It is thus obvious that defendant's claim of unconstitutional disparity in sentencing could not have been presented in an earlier proceeding, and, indeed, his attempt to raise the claim on appeal from his first post-conviction petition was rebuffed by this court. Therefore, defendant's claim of sentence disparity is neither *res judicata* nor waived. See *Flores*, 153 Ill. 2d at 281-82 (where defendant's ineffective-assistance claims could not have been raised on direct appeal or in his first post-conviction proceeding, those claims were neither *res judicata* nor waived). Further, although defendant's direct appeal challenged his death sentence as disproportionate and excessive (*Caballero*, 102 Ill. 2d at 46-47), the issue of disparity in sentencing between defendant and his codefendants is not, contrary to the State's assertion, "essentially the same" such that "*res judicata* bars a second visit to this issue." See *Flores*, 153 Ill. 2d at 293-94.

Finally, the statutory time limitation in the Act is also no bar to defendant's sentence disparity claim. The applicable section provides, *inter alia*:

"No proceedings under this Article shall be commenced more than *** 6 months after the date of the order denying certiorari by the United States Supreme Court *** or 3 years from the date of conviction, whichever is later, *unless the petitioner alleges facts showing that the delay was not due to his culpable negligence.*" (Emphasis added.) 725 ILCS 5/122—1 (West 1992).

Defendant's petition sets forth a factual chronology

in support of his allegation that "any delay in filing this Petition was not due to Defendant's culpable negligence but was a result of the timing of the sentencings of LaBoy and Aviles." The circuit court specifically agreed with defendant on this point, stating: "defendant could not have raised this disparate sentencing issue *** on his direct appeal or in his initial post-conviction petition." We do not believe this finding by the circuit court was manifestly erroneous. See *People v. Silagy*, 116 Ill. 2d 357, 365 (1987) (at a hearing under the Act, determinations by the trial court will not be disturbed unless manifestly erroneous). Therefore, we find that defendant has sufficiently met his burden of showing that the delay in filing his second post-conviction petition asserting a sentence disparity claim was not due to his culpable negligence.[1] See *People v. Lansing*, 35 Ill. 2d 247, 248 (1966); *People v. Heirens*, 271 Ill. App. 3d 392, 401 (1995).

Defendant contends that his petition was sufficient to require a hearing and a ruling on the merits of his sentence disparity claim, but that the circuit court dismissed the petition based on the mistaken belief that the issue of unconstitutional disparity of sentences could only be considered by an appellate court. Following oral argument by the parties at the hearing on the State's motion to dismiss, the circuit court cited extensively from this court's decisions in *People v. Page*, 156 Ill. 2d

---

[1]Defendant's petition also states that it is timely under section 122—1 because it is filed within six months after the date of the order denying *certiorari* by the United States Supreme Court. While it appears that, as in the case at bar, a second post-conviction petition filed within six months after the Supreme Court's denial of *certiorari* from a defendant's *initial post-conviction petition* is timely under section 122—1 (see *Flores*, 153 Ill. 2d at 271-72, 275), we decline the State's invitation to decide this issue of statutory interpretation, because we find the exception to that section's time limits applies here.

258 (1993), and *People v. Edgeston*, 157 Ill. 2d 201 (1993), concluding "these cases stand for the proposition that the issue of disproportionate sentence is a matter for appellate review." The circuit court has misinterpreted our holdings.

In *Page* and *Edgeston*, this court held that a defendant's request to have the jury at his capital sentencing hearing consider nonstatutory mitigating evidence of a codefendant's natural life sentence was neither constitutionally required nor relevant to the jury's examination of the individual defendant's characteristics and the circumstances of his offense. *Edgeston*, 157 Ill. 2d at 239. We further stated that in order to insure that the death penalty was not imposed in an arbitrary or capricious manner, we would, on direct review of an appropriate case, consider whether a death sentence is disproportionately harsh in comparison with a less severe sanction imposed on a codefendant convicted of the same offense. *Page*, 156 Ill. 2d at 270.

Neither *Page* nor *Edgeston* dealt with the sentence disparity issue in the context of a petition for post-conviction relief, nor did they hold that a circuit court could not consider such an issue raised under the Act. Disparity of sentence is cognizable under the Act in noncapital cases (see *People v. Wren*, 223 Ill. App. 3d 722, 729 (1992)), and where circuit courts routinely handle post-conviction petitions in capital cases, we see no reason to preclude examination of this issue. Thus, we agree with defendant that the circuit court erroneously believed the issue was "a matter for appellate review" only. A remand for a decision on the merits is therefore necessary, unless, as the State contends, the court's dismissal was correct because defendant's sentencing disparity claim does not constitute a substantial constitutional error within the meaning of the Act. See *Nash*, 173 Ill. 2d at 432 (the question on review is

the correctness of the trial court's result, not the correctness of the reasoning upon which that result was based); *People v. Hightower*, 258 Ill. App. 3d 517, 519 (1994).

One who seeks relief under the Act for disparity of sentence must allege facts which, if proven, indicate that his constitutional rights were violated in that regard. See *Wren*, 223 Ill. App. 3d at 729; *People v. Adams*, 164 Ill. App. 3d 742, 745 (1987). Arbitrary and unreasonable disparity between the sentences of similarly situated codefendants is impermissible. *People v. Jackson*, 145 Ill. 2d 43, 119 (1991), *vacated on other grounds*, 506 U.S. 802, 121 L. Ed. 2d 5, 113 S. Ct. 32 (1992); *People v. Godinez*, 91 Ill. 2d 47, 55 (1982). However, the mere disparity of sentences does not, by itself, establish a violation of fundamental fairness. *People v. Kline*, 92 Ill. 2d 490, 508 (1982). A disparity of sentences will not be disturbed where it is warranted by differences in the nature and extent of the concerned defendants' participation in the offense. *Flores*, 153 Ill. 2d at 294; *Godinez*, 91 Ill. 2d at 55.

Defendant's petition alleged that his death sentence was unconstitutionally disparate from the natural life sentence received by LaBoy, who, according to testimony at his trial and sentencing and the affidavit of defendant's counsel, played a more culpable role in the murders and had a more significant criminal record and less rehabilitative potential than defendant. The petition further alleged that defendant's death sentence was unconstitutionally disparate from the 40-year prison term received by Aviles, who played a similar role in the offenses. Defendant's petition was verified and its allegations were additionally supported by numerous exhibits, including circuit court computer records reflecting the sentences received by LaBoy and Aviles, and relevant portions of the official transcript

from LaBoy's trial and penalty phase proceedings detailing the relative culpability of the various participants in the murders, Aviles' plea agreement, LaBoy's criminal background, rehabilitative potential and the findings and conclusions of the trial court in sentencing LaBoy.

The standard for the evaluation of defendant's sentence disparity claim is clear:

> "A Post-Conviction Hearing Act proceeding is not an appeal *per se*, but a collateral attack on a judgment. [Citation.] In order to prevail under the Act, the defendant must establish a substantial deprivation of his rights under the United States Constitution or the Constitution of Illinois. [Citation.] The defendant is not entitled to an evidentiary hearing unless the allegations of his petition, supported where appropriate by the trial record or by accompanying affidavits, make a substantial showing that the defendant's rights have been so violated. [Citation.] For the purpose of determining whether to grant an evidentiary hearing, all well-pleaded facts in the petition and in any accompanying affidavits are to be taken as true. [Citations.]" *Caballero*, 126 Ill. 2d at 258-59.

In light of these considerations, we believe that defendant has made a substantial showing that his constitutional rights were violated so as to entitle him to an evidentiary hearing on the disparity between his death sentence and LaBoy's life sentence. See *People v. Gleckler*, 82 Ill. 2d 145 (1980) (death sentence vacated to prevent its arbitrary imposition where more culpable codefendant, with criminal record and similarly poor rehabilitative prospects, received imprisonment term).

However, with regard to Aviles, we find that even if all the "well-pleaded facts" in the petition and supporting exhibits are taken as true, defendant has not established an unconstitutional disparity. A sentence imposed on a codefendant who pleaded guilty as part of a plea agreement does not provide a valid basis of comparison to a sentence entered after a trial. See

*People v. Brown*, 267 Ill. App. 3d 482, 487 (1994). Further, dispositional concessions are properly granted to defendants who plead guilty when the interest of the public in the effective administration of criminal justice would thereby be served. *People v. Sivels*, 60 Ill. 2d 102, 105 (1975). Aviles, by agreeing to plead guilty and testify against LaBoy in exchange for the State's recommendation of a 40-year sentence: (1) acknowledged his guilt and showed willingness to assume responsibility for his conduct; (2) made a public trial unnecessary; and (3) gave cooperation which resulted in the successful prosecution of another offender engaged in equally serious or more serious criminal conduct. See *Sivels*, 60 Ill. 2d at 105. Thus, defendant cannot establish that the disparate treatment of himself and Aviles was unreasonable or unwarranted. We therefore affirm the circuit court's dismissal of defendant's claim of sentence disparity as to Aviles.

Finally, we address defendant's contention that the trial court's failure to "reverse-*Witherspoon*" the jury entitles him to post-conviction relief. Defendant raised this issue on direct appeal, and this court rejected the argument that his capital sentencing jury should have been "life qualified" in order to exclude all jurors who feel that the death penalty should be automatically imposed in all murder cases.[2] *Caballero*, 102 Ill. 2d at 45-46. Eight years later, in *Morgan v. Illinois*, 504 U.S. 719, 735-36, 119 L. Ed. 2d 492, 506-07, 112 S. Ct. 2222, 2233 (1992), the United States Supreme Court held that a capital defendant is entitled to inquire into prospec-

[2]In his first post-conviction petition, defendant argued that his trial counsel was incompetent for failing to "life qualify" the jury. This contention was not considered by this court on appeal because, based on another alleged error by counsel, defendant's petition was remanded for an evidentiary hearing to determine if he was denied a fair sentencing hearing. *Caballero*, 126 Ill. 2d at 268-69, 283.

tive jurors' opinions in support of the death penalty, or reverse-*Witherspoon* the jury. Defendant argues that, in light of *Morgan*, "he is entitled to the constitutional due process right to 'life qualify' the jury." We find, however, that the circuit court correctly concluded that the *Morgan* decision does not apply retroactively to cases on collateral review.

"In *Teague v. Lane* (1989), 489 U.S. 288, 103 L. Ed. 2d 334, 109 S. Ct. 1060, the United States Supreme Court barred the retroactive application, upon collateral review, of a new constitutional rule of criminal procedure that is announced after a defendant's conviction is final because all avenues of direct appeal have been exhausted." *People v. Holman*, 164 Ill. 2d 356, 380 (1995). The *Teague* Court held that a case announces a new rule "when it breaks new ground or imposes a new obligation on the States or the Federal Government." *Teague*, 489 U.S. at 301, 103 L. Ed. 2d at 349, 109 S. Ct. at 1070. In other words, "a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." (Emphasis in original.) *Teague*, 489 U.S. at 301, 103 L. Ed. 2d at 349, 109 S. Ct. at 1070; *People v. Flowers*, 138 Ill. 2d 218, 240 (1990). In *Flowers*, this court adopted the *Teague* test for purposes of analyzing collateral review under the Act. *Flowers*, 138 Ill. 2d at 237-38.

Application of the *Teague* test indicates that *Morgan* should not be applied retroactively because it constituted a new rule. Clearly, the result defendant seeks was not "dictated" by existing precedent, where this court rejected his original claim that his jury should have been "life qualified." *Caballero*, 102 Ill. 2d at 45-46. Indeed, in *People v. Cloutier*, 156 Ill. 2d 483, 497 (1993), this court found that prior to *Morgan*, "no reverse-*Witherspoon* questioning was required in Illinois." Further, "if prior to the rule's being established there was a

significant difference of opinion on the issue in the lower courts, this would indicate that a decision is a new rule." *Flowers*, 138 Ill. 2d at 240. In *Morgan*, the United States Supreme Court specifically stated that it granted *certiorari* because of the considerable disagreement on the issue among state courts of last resort. *Morgan*, 504 U.S. at 725, 119 L. Ed. 2d at 500, 112 S. Ct. at 2227.

Nevertheless, defendant argues that the *Morgan* Court did not enunciate a new rule, but rather based its decision on precedent interpreting the due process clause requirement that a jury be impartial. We agree with the State that while the right to reverse-*Witherspoon* does stem from a defendant's due process right to an impartial jury (see *Morgan*, 504 U.S. at 728-29, 119 L. Ed. 2d at 502-03, 112 S. Ct. at 2229), what renders *Morgan* a new rule is the "new obligation" imposed upon the trial courts to "life qualify" the jury upon the request of a capital defendant. Therefore, unless this new rule falls within one of the two exceptions recognized in *Teague*, it will not be applied retroactively.

The first exception states that the new rule should be given retroactive application if it places certain kinds of primary, private individual conduct beyond the power of the criminal-law-making authority to proscribe. *Teague*, 489 U.S. at 307, 103 L. Ed. 2d at 353, 109 S. Ct. at 1073. Defendant does not argue that this exception applies, and it clearly does not. The conduct proscribed in this case is murder, the prosecution of which is not prohibited by *Morgan*. Nor does the *Morgan* rule involve a categorical guarantee accorded by the Constitution such as a prohibition on the imposition of death on a certain class of offenders. See *Flowers*, 138 Ill. 2d at 241.

Under the second exception, a new rule may be applied on collateral review if it requires the observance of those procedures that are implicit in the concept of ordered liberty. *Teague*, 489 U.S. at 307, 103 L. Ed. 2d at

353, 109 S. Ct. at 1073. This second exception is reserved for "watershed rules of criminal procedure" implicating the fundamental fairness and accuracy of the trial. *Teague*, 489 U.S. at 311-12, 103 L. Ed. 2d at 356-57, 109 S. Ct. at 1076. While defendant contends that this exception applies to the right to reverse-*Witherspoon* a jury, we find it significant that *Morgan* requires a trial court to "life qualify" prospective jurors only *at the defendant's request*. The condition that the defendant make the request suggests that such *voir dire* questioning is not " 'so central to an accurate determination of innocence or guilt' " as to constitute a component of basic due process. See *Flowers*, 138 Ill. 2d at 241-42, quoting *Teague*, 489 U.S. at 313, 103 L. Ed. 2d at 358, 109 S. Ct. at 1077. Therefore, because this exception must be narrowly construed (*Flowers*, 138 Ill. 2d at 242), we find that the *Morgan* rule does not fall within its boundaries.

In light of these considerations, we find no error in the circuit court's dismissal of defendant's post-conviction petition with respect to this issue. Application of *Morgan* to defendant's post-conviction proceeding would have been an improper, retroactive operation of a new rule of criminal procedure in order to collaterally challenge defendant's conviction, which had become final before *Morgan* was announced. See *Holman*, 164 Ill. 2d at 381-82.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed in part and reversed in part. The cause is remanded to the circuit court for an evidentiary hearing on that portion of defendant's post-conviction petition that alleges that his sentence of death is unconstitutionally disparate from the natural life sentence imposed on codefendant LaBoy.

*Judgment affirmed in part and*
*reversed in part;*
*cause remanded.*

JUSTICE BILANDIC, dissenting:

The majority opinion holds that "defendant has made a substantial showing that his constitutional rights were violated so as to entitle him to an evidentiary hearing on the disparity between his death sentence and LaBoy's life sentence." 179 Ill. 2d at 217. I respectfully dissent from the majority's holding on this issue. For the reasons that follow, I find that the circuit court properly dismissed defendant's petition for postconviction relief. See *People v. P.H.*, 145 Ill. 2d 209, 220 (1991) (the reasons provided by the trial court for its judgment are immaterial if the decision is correct).

The facts as set forth in this court's opinion on direct appeal (*People v. Caballero*, 102 Ill. 2d 23 (1984)) reveal that defendant, Luis Ruiz, Placido LaBoy and Nelson Aviles, all members of the Latin Kings, committed the murders of Arthur and Michael Salcido and Frank Mussa. Defendant and his companions encountered the three victims when Michael Salcido approached Luis Ruiz and asked him where he could purchase marijuana. Michael told defendant and his companions that he was a member of a rival street gang, the Latin Eagles, because he believed they were members of that gang. Defendant and his companions got into one of the victim's cars on the pretense that they would help the victims buy marijuana. Defendant and his companions had the car driven to an alley where they instructed Michael to get out of the car and follow them to buy some marijuana. While they were alone with Michael, defendant and his companions beat him. Upon returning to the car, defendant and the others decided to kill Michael and his friends because they had seen their faces and could identify them. Michael and Frank were taken out of the car by defendant and LaBoy. When defendant returned to the car, he watched while Aviles stabbed Arthur. Frank was then brought to the car. Ultimately,

defendant encouraged LaBoy to cut Frank's throat. Defendant then retrieved Michael and brought him to the car containing the bodies of Arthur and Frank. Defendant pushed Michael into the car, pulled back his head, slit his throat and stabbed him in the chest several times.

As noted in the majority opinion, defendant's petition for post-conviction relief alleged that his death sentence was unconstitutionally disparate from the natural life sentence received by LaBoy because LaBoy played a more culpable role in the murders, had a more significant criminal record and less rehabilitative potential than defendant. 179 Ill. 2d at 216. This court has repeatedly commented that simply because "some or all of the members of [a codefendant's] sentencing jury chose not to impose the death penalty in [the codefendant's] case does not, in our view, render the defendant's own sentence disproportionate." See *People v. Kitchen*, 159 Ill. 2d 1, 46 (1994). From this court's recitation of the facts on direct appeal, it is evident that defendant's claim of unconstitutional disparity in sentencing is not supported. Defendant alleges that LaBoy was the ringleader and implies that he was only a follower. Evidence that a defendant is a follower, as opposed to a leader, has been held to be a significant factor in disparate sentencing analysis. See *People v. Jackson*, 145 Ill. 2d 43, 125 (1991). The facts in this case, however, refute defendant's claim. They show that defendant encouraged LaBoy to slash one of the victim's throats and then proceeded to slash another victim's throat himself and repeatedly stab that victim. As noted by this court on direct appeal, defendant was an active, willing participant in all three of the murders. *Caballero*, 102 Ill. 2d at 42. Defendant has thus failed to show that he was merely a follower and that LaBoy was more culpable.

The facts, as revealed in this court's opinion on direct appeal, also provide some insight into defendant's character. The facts show that defendant is a ruthless killer, who exhibited no remorse for his actions. Following his statement to the police, defendant expressed a willingness to kill again. When asked if he had a chance to do it over " 'would he do it again,' " defendant stated that he would " 'if it was a sure thing.' " *Caballero*, 102 Ill. 2d at 46. Defendant's only regret was that he was caught. Defendant's statements expressing a lack of remorse reveal that defendant had little rehabilitative potential. In light of the facts regarding defendant's actions during the murder and his character, LaBoy's allegedly more severe criminal record, standing alone, does not render defendant's death sentence arbitrarily and unreasonably disparate with that of LaBoy's life sentence. See *People v. Towns*, 174 Ill. 2d 453, 481 (1996).

I would therefore find that defendant failed to establish that the sentence of death imposed on him is unconstitutionally disparate from LaBoy's life sentence. As such, defendant's petition fails to make a substantial showing that defendant's constitutional rights have been violated. I would therefore affirm the circuit court's dismissal of defendant's claim of unconstitutional sentence disparity.

JUSTICES MILLER and HEIPLE join in this dissent.