2021 IL App (2d) 191001
No. 2-19-1001
Opinion filed April 21. 2021

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 17-CF-2484 |
| JAQUAN S. ANDERSON, | ) ) | Honorable Daniel B. Shanes, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court, with opinion.
Justices Zenoff and Brennan concurred in the judgment and opinion.

**OPINION**

¶ 1 Defendant, Jaquan S. Anderson, entered an open guilty plea to armed robbery, a Class X felony (720 ILCS 5/18-2(a)(1), (b) (West 2016)). The trial court sentenced him to 18 years in prison (see 730 ILCS 5/5-4.5-25(a) (West 2016)). He appeals, contending that his sentence was (1) an abuse of discretion and (2) unreasonably disproportionate to the 14-year sentences received by his codefendants. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3 Defendant, along with codefendants Jamaal S. Anderson (Jamaal)—his twin brother—and Jhashi J. Adorno, was charged with armed robbery and other offenses. Jamaal and Adorno entered fully negotiated pleas to armed robbery in exchange for 14-year sentences.

¶ 4      Defendant rejected an offer of a 15-year sentence in exchange for his guilty plea and his testimony against Adorno. Later, the State made two additional offers. Under one offer, defendant would plead guilty to armed robbery and serve 18 years in prison "at 50 percent." Under an alternative offer, defendant would enter an open plea to armed robbery. In either case, the State would remove the 15-year firearm enhancement from the charge. Defendant accepted the second option.

¶ 5      The factual basis for the plea was that on September 13, 2017, defendant and his codefendants entered Locksmith Resources. One of the codefendants was wielding as a weapon an item that could be used as a bludgeon. The three men took key fobs from employee Benjamin Jacobs.

¶ 6      The presentence investigation report (PSI) contained further details, namely that the three men entered the business brandishing several firearms. They tied up and duct-taped several workers and took several bins of car remotes before leaving in a rental truck. At an intersection, the driver attempted to drive between two lanes of stopped traffic, striking vehicles before the truck came to a stop. Defendant and his companions fled on foot. None of the occupants of the other vehicles were injured.

¶ 7      The PSI further showed that defendant, who was born in 1996 and was 21 years old when he committed the offense, had an extensive history of juvenile adjudications and one adult criminal conviction.

¶ 8      As for his juvenile history, defendant was charged in April 2010 with burglary and criminal damage to state property. He admitted to criminal trespass to state land, was adjudicated delinquent, and was sentenced to six months' juvenile probation, which he satisfactorily completed.

¶ 9    In June 2011, defendant was arrested and charged with residential burglary. He admitted to theft.   Defendant was adjudicated delinquent and sentenced to 18 months' juvenile probation. On March 7, 2012, the State sought to revoke defendant's probation. On May 17, 2012, defendant was arrested for assault and domestic battery (the PSI indicates "12JD244, withdrawn"). On May 25, 2012, defendant admitted to violating probation. The following day, he was arrested for theft and criminal trespass. On July 30, 2012, he admitted to criminal trespass, was readjudicated delinquent, and had his probation extended for one year. On August 20, 2012, the State filed a second revocation petition. On September 5, 2012, defendant again admitted to violating probation. He was ordered to enter the Gateway residential program, from which he was unsuccessfully discharged. On September 19, 2012, he was arrested for aggravated battery (the PSI indicates "12 JD 603, withdrawn"). On November 7, 2012, he was readjudicated delinquent, and his probation was extended another nine months. On November 9, 2012, he was arrested for robbery, aggravated battery, and resisting a peace officer. On November 13, 2012, a third revocation petition was filed. On December 11, 2012, defendant admitted to theft and to violating probation. He was adjudicated delinquent and was committed to the Department of Juvenile Justice. On January 16, 2013, a fitness evaluation was ordered. On February 11, 2013, defendant was found fit, and his probation was terminated. On February 15, 2013, defendant was admitted to the Illinois Youth Center in St. Charles. He was paroled in September of that year. In October 2013, he was ticketed twice for curfew violations. On October 16, 2013, defendant was arrested on two counts of criminal trespass to a vehicle and three counts of theft. On November 27, 2013, defendant admitted to one count of criminal trespass, and all other counts were withdrawn. On December 18, 2013, he was adjudicated delinquent, and the case was closed. His parole was not revoked, and he was discharged on September 17, 2015.

¶ 10    The PSI noted that, while on probation, in addition to being arrested multiple times, defendant failed to complete his public service requirements. He generally attended school but did not finish high school or obtain a GED.   He obtained a substance abuse evaluation but failed to complete treatment.

¶ 11    As an adult, defendant was arrested in July 2014 for residential burglary. He eventually pleaded guilty to attempted residential burglary and was sentenced to two years' probation. After defendant failed to report to the probation department, the State moved to revoke his probation. He was found in indirect criminal contempt of court and sentenced to 154 days in jail, with credit for 77 days served. Defendant tested positive for cannabis in 2015, and he generally failed to comply with his probation obligations. A second petition to revoke probation was filed. After defendant was found fit to stand trial, the court revoked his probation and sentenced him to three years in prison. He was granted mandatory supervised release (MSR) on February 7, 2017. He was still on MSR when he committed the offense in question.

¶ 12    Defendant has three children. The mother of the eldest is Shannon Scales. Defendant and Scales were not on speaking terms. He "does not get to see much of their child," and Scales had "taken him to court for child support."

¶ 13    At the sentencing hearing, defendant read a statement in which he expressed remorse and accepted responsibility for his actions. While in jail, he had had time to reflect on his actions and had come to realize the fear and terror he had caused.

¶ 14    The prosecutor asserted that defendant, in addition to his juvenile and adult criminal record, had gotten in fights at school, had physical contact (a "chest bump") with a teacher, and had been expelled after burglarizing the school. Defendant had also been placed in segregation twice while in jail awaiting sentencing.

¶ 15    Defense counsel argued that defendant played a similar role in the offense to that of his codefendants. Therefore, he should receive a similar sentence.

¶ 16    The trial court acknowledged defendant's statements expressing remorse. The court also considered that defendant had a difficult childhood in which his father was absent and he frequently witnessed violence in his neighborhood. However, it also detailed his "significant" criminal history and noted that in every case the charges had "been reduced in some way."

¶ 17    The court considered in mitigation that defendant accepted responsibility by pleading guilty. By accepting responsibility, defendant was "moving along on that road of *** rehabilitation." The court did not find it significant that defendant waited until the eve of trial to plead guilty.

¶ 18    The court acknowledged that both codefendants had pleaded guilty in exchange for 14-year sentences. The court noted that, because those pleas were fully negotiated, the court did not have the benefit of PSIs for the codefendants and, consequently, did not have "as *** robust [an] understanding" of the facts of the case when sentencing them.

¶ 19    Finally, the court noted that defendant faced a 21-year minimum sentence for this offense until the State removed the firearm enhancement and the court accepted that plea. After considering all these factors, the court sentenced defendant to 18 years in prison.

¶ 20    Defendant moved to reconsider the sentence, arguing that it was disproportionate to those of his codefendants. The court denied the motion, and defendant timely appealed.

¶ 21                                    II. ANALYSIS

¶ 22    On appeal, defendant first contends that the 18-year sentence was an abuse of discretion. He argues that the court did not give sufficient weight to his youth, rehabilitative potential, and sincere expressions of remorse. He further contends that the court did not consider his status as a

father and the impact that his lengthy incarceration will have on his family. Defendant alternatively contends that his sentence was disproportionate to the 14-year sentences his codefendants received.

¶ 23    The trial court has broad discretionary powers in imposing a sentence, and its sentencing decision is entitled to great deference. *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). This is because the trial court is generally in a better position than a reviewing court to decide the appropriate sentence. *Id.* The trial court has the opportunity to weigh such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. *People v. Streit*, 142 Ill. 2d 13, 19 (1991). Consequently, we may not substitute our judgment for that of the trial court merely because we would have weighed these factors differently. *Stacey*, 193 Ill. 2d at 209.

¶ 24    The trial court, in lengthy comments, carefully considered various aggravating and mitigating factors in imposing the sentence. As the trial court noted and as defense counsel conceded, the instant offense was quite serious. In fashioning a sentence, the trial court need not give a defendant's rehabilitative potential greater weight than the seriousness of the offense. *People v. Fort*, 229 Ill. App. 3d 336, 341-42 (1992). Moreover, the court noted that, despite defendant's relatively young age, he had accumulated a substantial number of contacts with the justice system including delinquency adjudications and a criminal conviction. The court noted that, in virtually every case in defendant's juvenile history, the original charges had been reduced and defendant was sentenced to probation. However, he performed poorly on probation, resulting in multiple revocations. When defendant was charged with residential burglary as an adult, he pleaded guilty to attempted residential burglary and received probation. However, his probation was revoked, and he was sentenced to prison. He was still on MSR for that crime when he was arrested for this offense. Thus, the court appropriately concluded that, despite receiving lenient treatment numerous times, defendant had failed to take advantage of those opportunities for

rehabilitation. We cannot say that the trial court abused its discretion in imposing a sentence at the exact midpoint of the 6- to 30-year range for a Class X offense. See 730 ILCS 5/5-4.5-25(a) (West 2016).

¶ 25    Defendant cites *Miller v. Alabama*, 567 U.S. 460, 471-72 (2012), in support of an argument that the trial court failed to give sufficient consideration to his youth and the "hallmarks of adolescence," such as lack of maturity and impulsiveness, which in his view make adolescents and young adults more amenable to rehabilitation. However, this court has consistently held that *Miller*'s requirement does not apply to those who, like defendant, were legally adults when they committed their crimes. See *People v. Suggs*, 2020 IL App (2d) 170632, ¶ 35 (declining to apply *Miller* to a 23-year-old defendant); *People v. Hoover*, 2019 IL App (2d) 170070, ¶¶ 37-39 (22-year-old defendant). Moreover, the factual basis does not reveal the rash, impetuous act of an adolescent but a carefully planned crime. See *Suggs*, 2020 IL App (2d) 170632, ¶ 36 (defendant's crime exhibited few if any of the "signature qualities" of youth).

¶ 26    Defendant next contends that his sentence was unreasonably disparate to the 14-year sentences his codefendants received under their plea agreements. Fundamental fairness forbids arbitrary and unreasonable disparities between the sentences of similarly situated codefendants. *People v. Caballero*, 179 Ill. 2d 205, 216 (1997). However, a disparity in sentences does not, by itself, establish fundamental unfairness. *Id.* Generally, a sentence imposed on a defendant who pleaded guilty per an agreement "does not provide a valid basis of comparison" to one imposed on another defendant after a trial. *People v. Moss*, 205 Ill. 2d 139, 171 (2001); see also *Caballero*, 179 Ill. 2d at 217.

¶ 27    The parties have not cited, and our research has not uncovered, a case discussing whether a sentence imposed following an open plea of guilty may be validly compared to a sentence

imposed under a fully negotiated plea. The trial court stated that it would not penalize defendant for waiting until the eve of trial to plead guilty and that it gave defendant credit for accepting responsibility by pleading guilty. The court thereby indicated that it did not consider defendant's plea the equivalent of a trial. However, the court also noted that, because no PSIs were prepared for Adorno and Jamaal, the court had a more "robust" understanding of defendant's social and criminal histories. Whether this is a valid basis for disparate sentences is an issue we need not decide, however, because defendant's argument suffers from a more fundamental defect.

¶ 28    A defendant who contends that his sentence is unfairly disparate to that of a codefendant has the burden to produce a record sufficient to support the claim. *People v. Horta*, 2016 IL App (2d) 140714, ¶ 52. Thus, if we have no record of the factors that the trial court relied on when sentencing the codefendant, we cannot decide whether any sentencing disparity was unfair. *Id.* Here, like the trial court, we have no record of the codefendants' criminal and social histories. We do not know what information the trial court had available when sentencing the codefendants, such as what factual bases were provided for those pleas or whether the court heard any evidence from other sources before accepting the pleas. We do not know the codefendants' complete criminal histories, including the ultimate disposition of charges and their records of compliance with probation. We do not know what, if any, information the court knew about the codefendants' family, school, and employment histories. A sentence should be based on a wide variety of factors. See *Streit*, 142 Ill. 2d at 19. Without a complete picture of the information available to the trial court when it sentenced the codefendants, we cannot meaningfully compare defendant's sentence to theirs.

¶ 29    Defendant notes that his own PSI states that Jamaal has juvenile adjudications for "Crim Trespass to Land, Retail Theft, Theft, Aggravated Battery, Criminal Trespass to Building, Curfew,

and Assault." He has convictions for "Theft, Poss Stolen Vehicle, and Armed Robbery." Defendant argues from this that Jamaal's criminal history is at least as serious as his own, if not more so. However, comparing the sentences of multiple defendants is more nuanced than simply listing each defendant's history of offenses. Here, for example, the trial court spoke at length about defendant's history of having charges reduced and receiving probation, then failing to comply with the conditions of probation. This resulted in defendant being placed in juvenile detention for a time and being sent to prison as an adult after his probation was revoked. Defendant was still on MSR from that conviction when he committed this offense. Defendant had been placed in segregation while in jail awaiting trial for this offense. Whether Jamaal has a similar history of noncompliance with probation, we cannot say. And, of course, we have no information at all about Adorno's criminal or social history.

¶ 30    Defendant cites *People v. Sherman*, 52 Ill. App. 3d 857 (1977), in support of his argument that his sentence was unreasonably disparate to those of his codefendants, but that case is distinguishable. There, the trial court acknowledged that the defendant and his codefendant were similarly situated in most respects but imposed a significantly longer sentence on the defendant for the sole reason that his codefendant had accepted responsibility by admitting his guilt to a probation officer. The reviewing court found that the fact that the codefendant admitted his guilt after having been found guilty by a jury was not a valid basis for a lesser sentence. *Id.* at 858-59. Here, the trial court acknowledged that defendant, like his codefendants, had accepted responsibility by pleading guilty. As detailed above, the court cited other factors in sentencing defendant. Moreover, in *Sherman*, the court was able to review the PSIs of both defendants. *Id.* at 858.

¶ 31    Because we lack sufficiently detailed information about the codefendants, we cannot say that defendant's sentence was disproportionate to theirs even if their fully negotiated pleas offer a valid basis of comparison.

¶ 32                                    III. CONCLUSION

¶ 33    We affirm the judgment of the circuit court of Lake County.

¶ 34    Affirmed.

---

**No. 2-19-1001**

---

| | |
|---|---|
| **Cite as:** | *People v. Anderson*, 2021 IL App (2d) 191001 |
| **Decision Under Review:** | Appeal from the Circuit Court of Lake County, No. 17-CF-2484; the Hon. Daniel B. Shanes, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Thomas A. Lilien, and Christopher McCoy, of State Appellate Defender's Office, of Elgin (Melissa Vachon, law student), for appellant. |
| **Attorneys for Appellee:** | Michael G. Nerheim, State's Attorney, of Waukegan (Patrick Delfino, Edward R. Psenicka, and Leslie Martin, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |