NOTICE

Decision filed 06/15/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 210018-U

NO. 5-21-0018

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jackson County. |
| | ) | |
| v. | ) | No. 14-CF-522 |
| | ) | |
| TERRANCE ALLEN VINSON, | ) | Honorable |
| | ) | Ralph R. Bloodworth III, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court.
Presiding Justice Boie and Justice Moore concurred in the judgment.

**ORDER**

¶ 1 *Held*: Where the defendant did not satisfy the "cause" prong of the cause-and-prejudice test, the circuit court did not err in denying him leave to file a successive postconviction petition, and since any argument to the contrary would lack merit, the defendant's appointed counsel on appeal is granted leave to withdraw, and the judgment of the circuit court is affirmed.

¶ 2 Following a jury trial, defendant, Terrance Allen Vinson, was convicted of home invasion (720 ILCS 5/19-6(a)(3) (West 2014)) and armed robbery (*id.* § 18-2(a)(2)). The trial court sentenced him to 65 years' imprisonment for home invasion, which included a 15-year firearm add-on. On appeal, this court vacated the sentence and remanded the matter to the trial court for resentencing. *People v. Vinson*, 2019 IL App (5th) 160124-U.

1

On remand, the court sentenced defendant to 39 years' imprisonment, including the firearm add-on. Defendant filed a notice of appeal.

¶ 3 The defendant's appointed attorney on appeal, the Office of the State Appellate Defender (OSAD), has concluded that this appeal lacks merit. Accordingly, OSAD has filed a motion to withdraw as counsel for the defendant (see *Anders v. California*, 386 U.S. 738 (1967)) along with a brief in support of the motion. OSAD has provided the defendant with a copy of its *Anders* motion and brief. This court has provided him with ample opportunity to file a written *pro se* brief, memorandum, etc., responding to OSAD's motion or explaining why this appeal has merit. The defendant has not filed any sort of response. Having read OSAD's *Anders* motion and brief, and having examined the record on appeal, this court concludes that the instant appeal does indeed lack merit. There is no potential ground for appeal. Accordingly, we grant OSAD leave to withdraw and affirm judgment of the circuit court.

¶ 4 BACKGROUND

¶ 5 In the early morning hours of December 11, 2014, three or four men entered the trailer home of Larry and Bethann Clites and their children, Nicholas and Kenneth. At trial, Larry Clites testified that he saw four men with masks, t-shirts, or bandannas wrapped around their faces. They were standing behind Nicholas, holding a gun to the back of his head. Clites said the man holding the gun to Nicholas was wearing dark clothing and "a red bandanna around his face with a black hoodie." The gunman ushered the family into the back bedroom, where the intruders demanded money and marijuana.

2

¶ 6    The men placed Nicholas on the bed and threatened to shoot him in the face.  The men then grabbed Bethann and held her at gunpoint.  The men took an ounce of marijuana from a dresser and between $500 and $700 in cash.  They also demanded everyone's cellphones.  The men had the bottoms of their faces covered and all had handguns.  Clites recognized the voice of the man holding a gun to his face and remembered selling him "nickel bags" of marijuana twice before.

¶ 7    Police tracked one of the stolen cellphones, tracing it to a car driven by Melvin Sanford in which defendant and Elijah Mosley were passengers.  Mosley testified pursuant to a plea agreement that he, Sanford, and defendant committed the home invasion and robbery.  Mosley testified that defendant and Sanford wore black masks.  Mosley claimed that defendant was the only one with a gun.  Defendant grabbed Bethann Clites around her neck, got Nicholas from his bedroom, choked him, and threw him to Bethann while pointing a gun at them.  Mosley took a bag of marijuana from a bowl on a dresser.

¶ 8    The jury found defendant guilty.  At sentencing, the trial court found that Nicholas was a victim under 9 years of age and, accordingly, imposed an extended-term sentence of 50 years for home invasion plus a 15-year firearm add-on, for a total of 65 years.

¶ 9    On appeal, this court held that it was improper for the trial court to impose an extended-term sentence based on Nicholas's age when the issue of his age was not presented to the jury.  *Vinson*, 2019 IL App (5th) 160124-U, ¶¶ 73-74 (citing *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and 725 ILCS 5/111-3(c-5) (West 2014)).  We affirmed defendant's conviction and remanded for a new sentencing hearing.  *Id.* ¶ 74.

3

¶ 10    At the subsequent hearing, several of defendant's friends and relatives testified about his positive impact on their lives. Lucinda Vinson, defendant's grandmother, said that he helped take care of her when he lived with her. Yolanda Vinson, defendant's mother, testified that he was a "big influence on a lot of kids" in the area, encouraging and supporting them even while incarcerated. She testified that he was very helpful and would take out her garbage, repair her vehicle, mow the grass, and things of that nature.

¶ 11    Charlena Wilson, defendant's aunt, testified that defendant always responded when his family needed him. Wilson wished for defendant's time to be reduced so that he could spend time with his eight-year-old son. Celeste Korando, who represented defendant during his jury trial, testified that defendant was "one of the most intelligent clients" she ever had. Defendant "has definitely a high rehabilitative potential." Defendant was taking college courses while in jail.

¶ 12    Kim Vinson, defendant's aunt, testified that he often helped her son who had a mental disability. Amiyah Allen had been adopted into defendant's family about 16 years before, when she was nine years old. She described defendant as a father figure who taught her how to drive. Defendant attended her sporting events games when she was in school and cheered for her. He encouraged her to get good grades. Allen explained that defendant wanted all the "kids" around him to do well.

¶ 13    Brandi North, defendant's former girlfriend, testified that she had known him for 25 years. Although defendant was not her children's biological father, he acted as a "dad to all four." He continued to do so even after the two stopped dating. Jeniah Thompson, Brandi North's daughter, who was attending Southern Illinois University on a basketball

4

scholarship, testified that defendant had always supported her in sports and practiced with her. He always encouraged her to maintain good grades in school.

¶ 14 The State called no witnesses in aggravation. However, the presentence investigation report revealed that defendant had an extensive criminal history. Defendant had been convicted of kidnapping, unlawful restraint, five separate instances of burglary, mob action, battery, resisting or obstructing a peace officer, four instances of theft or retail theft, and various other offenses including trespassing, possession of alcohol by a minor, possession of cannabis and possession of a controlled substance. He had been sentenced to the Department of Corrections (DOC) three previous times.

¶ 15 In arguing for the maximum sentence, the State noted the seriousness of the offense and defendant's lengthy criminal history. The prosecutor further commented that at the first sentencing hearing, defendant stated that the victims were "never going to remember us." The State argued that the statement "speaks volumes to the amount of remorse that Mr. Vinson has for the crimes that he committed."

¶ 16 In arguing for a minimum sentence, defense counsel noted the number of people who had supported defendant at the hearing and testified to his character. Counsel further noted that the other two men involved in the case had received sentences of "25 years and seven years at a boot camp."

¶ 17 The trial court, while acknowledging the substantial mitigating factors, nevertheless noted defendant's criminal history and the need to deter others from committing similar offenses. The court sentenced defendant to 24 years' imprisonment plus the 15-year

5

firearm enhancement. The written judgment provided that defendant was entitled to 2032 days of credit for time spent in custody.

¶ 18    Defendant moved to reconsider the sentence. The motion argued that the court had ample evidence of defendant's efforts to improve himself while incarcerated, including his clean behavioral record and the college courses he had completed. The motion noted the testimony of defendant's friends and family about his mentorship. The motion further argued that the sentence was excessive compared to those of the codefendants, who were sentenced to 7 years in DOC boot camp and 25 years, respectively. Finally, the motion argued that the State had taken out of context defendant's comments from the first sentencing hearing in arguing that defendant said that the victims would not remember the events of the crime. The motion explained that, in context, defendant meant only that he would be reminded daily of his conviction. The prosecutor argued that the reason for the disparity in sentences between defendant and his codefendants was that defendant had held a gun to a young boy.

¶ 19    The trial court noted that as of the January 15, 2021, hearing date, defendant was entitled to 2228 days of credit. Defendant and his attorney agreed that this was correct. The court then denied the motion to reconsider. Defendant filed a notice of appeal, and OSAD was appointed.

¶ 20                              ANALYSIS

¶ 21    In its motion to withdraw, OSAD concludes that there is no issue that could support an appeal. Counsel first contends that there is no arguable merit to a contention that the

trial court erred in resentencing defendant or in denying the motion to reconsider the sentence. We agree.

¶ 22 We will not disturb a sentence within the applicable range unless the trial court abused its discretion. *People v. Stacey*, 193 Ill. 2d 203, 209-10 (2000). An abuse of discretion occurs only where a sentence is at great variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense. *Id.* at 210. "It is the province of the trial court to balance relevant factors and make a reasoned decision as to the appropriate punishment in each case" (*People v. Latona*, 184 Ill. 2d 260, 272 (1998)), and we may not substitute our judgment for the trial court's merely because we might weigh the pertinent factors differently (*Stacey*, 193 Ill. 2d at 209).

¶ 23 The sentencing range for home invasion, a Class X felony, is no less than 6, and no more than 30, years, exclusive of the firearm enhancement. See 720 ILCS 5/19-6(a)(3), (c) (West 2014); 730 ILCS 5/5-8-1(a)(1)(d)(i) (West 2014). The trial court's sentence, while near the upper limit of that range, was not an abuse of discretion.

¶ 24 While many of defendant's relatives testified to his good character and positive influence on their lives, and defendant was attempting to improve himself while in prison, the crime of which he was convicted was nevertheless extremely serious. Defendant and his accomplices held an entire family, including two young children, at gunpoint in order to steal money and marijuana. In the process, defendant threatened to shoot a nine-year-old boy. The seriousness of the crime is the most important factor in determining an appropriate sentence, not the presence of mitigating factors. *People v. Quintana*, 332 Ill. App. 3d 96, 109 (2002). Also, defendant had a lengthy criminal history, including several

7

prior sentences to the DOC. Thus, there is no viable argument that the sentence was an abuse of discretion.

¶ 25   Counsel further concludes that defendant could not succeed on an argument that his sentence was disproportionate to those of his codefendants, Sanford and Mosley. Fundamental fairness forbids arbitrary and unreasonable disparities between the sentences of similarly situated codefendants. *People v. Caballero*, 179 Ill. 2d 205, 216 (1997). However, a disparity in sentences does not, by itself, establish fundamental unfairness. *Id.*

¶ 26   Here, Mosley was sentenced pursuant to a plea agreement, resulting in a seven-year sentence. Generally, a sentence imposed on a defendant who pleaded guilty per an agreement "does not provide a valid basis of comparison" to one imposed on a defendant after a trial. *People v. Moss*, 205 Ill. 2d 139, 171 (2001); *People v. Anderson*, 2021 IL App (2d) 191001, ¶ 26. Further, as counsel notes, the record contains little if any information about codefendant Sanford and his sentence. Thus, there is simply insufficient evidence available to validly compare the sentences. See *Anderson*, 2021 IL App (2d) 191001, ¶ 28 (a defendant who contends that his sentence is unfairly disparate to that of a codefendant has the burden to produce a record sufficient to support the claim).

¶ 27   Counsel further concludes that defendant could not succeed on a challenge to the prosecutor's characterization of his statement at the first sentencing hearing that the victims would not remember details of the offense. In his motion to reconsider, defendant argued that he meant only that he "would be reminded daily of his conviction" and was "in no way minimizing the impact of the offense on" the victims. However, as counsel points out, the prosecutor's contention that defendant was doing exactly that was also a fair reading of his

statement. In any event, the trial court did not mention the comment in imposing the sentence, so it appears that the trial court did not attach any significant weight to it. See *People v. Bourke*, 96 Ill. 2d 327, 333 (1983) (resentencing not required where record demonstrates that consideration of improper factor did not result in greater sentence).

¶ 28 Counsel notes that the trial court incompletely admonished defendant of his appeal rights following the sentencing hearing in that it neglected to inform him that any issue not included in a motion to reconsider the sentence would be forfeited on appeal. See Ill. S. Ct. R. 605(a) (eff. Oct. 1, 2001). However, the failure to provide proper admonishments does not automatically require reversal. *People v. Henderson*, 217 Ill. 2d 449, 455 (2005). Here, defense counsel did file a thorough motion to reconsider the sentence. Moreover, we agree with counsel that, because there was no meritorious issue that could have been included in the motion, defendant was not prejudiced by the incomplete admonishments.

¶ 29 Counsel also considered arguing that defense counsel was ineffective for failing to object to the State's argument that defendant deserved a longer sentence than his codefendants because he was "the one who held a nine-year-old child at gunpoint." However, counsel concludes that that issue would not be meritorious.

¶ 30 A defendant has the right to the effective assistance of counsel. Defense counsel provides ineffective assistance when his or her representation falls below an objective standard of reasonableness, and those deficiencies undermine confidence in the outcome of the proceedings or deprive the defendant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687-89 (1984).

¶ 31 Appellate counsel notes that the trial evidence on this point was conflicting. Mosley testified that defendant was the only person with a gun and that he pointed it at Nicholas. However, Larry Clites testified that all of the intruders had guns and that the intruder that first held Nicholas at gunpoint was wearing a red bandanna. Mosley admitted that he covered his face with a red shirt while defendant and Sanford wore black masks. Counsel thus argues that it is unclear who possessed handguns during the home invasion and whether defendant was the intruder who pointed a gun at Nicholas Clites.

¶ 32 Counsel concludes, however, that assuming the failure to object to the prosecutor's comments was unreasonable, defendant was not prejudiced. Defendant himself immediately brought the issue to the court's attention, stating that Clites testified "that the guy in the red mask, which was Elijah Mosley, was the one that held the gun on the child." Moreover, the judge, who was not the trial judge, had familiarized himself with the trial testimony by reviewing the transcripts, so he was familiar with the evidence. Finally, the trial court did not state at any point that it was relying on the State's argument in denying the motion to reconsider the sentence. See *Bourke*, 96 Ill. 2d at 333.

¶ 33 Finally, counsel concludes that defendant may not raise any issue regarding the trial court's calculation of his credit for time spent in custody. Counsel calculates that defendant spent 2093 days in custody before the second sentencing hearing, but the court credited him with only 2038 days. Nevertheless, counsel notes that the trial court retains jurisdiction to correct errors in the calculation of sentencing credit, and thus the issue must first be raised in the trial court. Ill. S. Ct. R. 472(a)(3), (c) (eff. May 17, 2019).

10

¶ 34                         CONCLUSION

¶ 35    For the foregoing reasons, OSAD's *Anders* motion is granted, and the judgment of the circuit court is affirmed.

¶ 36    Motion granted; judgment affirmed.