2025 IL App (1st) 221418-U

No. 1-22-1418

Order filed March 5, 2025

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 04 CR 7764 |
| JAMES ANDERSON, | ) ) | Honorable Adrienne Davis, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

PRESIDING JUSTICE LAMPKIN delivered the judgment of the court.
Justices Martin and D.B. Walker concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The judgment of the trial court dismissing defendant's second-stage petition for postconviction relief is reversed.

¶ 2   Defendant James Anderson appeals the dismissal of his second-stage petition for postconviction relief for failure to make a substantial showing of a constitutional violation. Defendant now argues that he made a substantial showing of a constitutional violation or, alternatively, that he did not receive the reasonable assistance of counsel that is guaranteed to him

at the second stage of proceedings under the Post-Conviction Hearing Act (the Act), 725 ILCS 5/122-1 *et seq.* (West 2012).

¶ 3    For the reasons that follow, we reverse the judgment of the trial court and remand for further second-stage proceedings.[1]

¶ 4                                    I. BACKGROUND

¶ 5    On May 21, 2007, a jury found defendant guilty, based on a theory of accountability, of first degree murder and aggravated battery with a firearm. Defendant was sentenced to consecutive sentences of 35 years' imprisonment for first degree murder and 10 years' imprisonment for aggravated battery with a firearm. We affirmed defendant's conviction on June 27, 2011, and we recite the facts from that opinion relevant to the issues now before us. *People v. Anderson*, 2011 IL App (1st) 071768.

¶ 6    On May 3, 2003, defendant agreed to drive his co-defendants, Christopher Washington and Sheldon Smith, to a neighborhood where his co-defendants shot three people. Two suffered injuries and one died.

¶ 7    One of the victims, Sherman Lee, testified that on May 3, 2003, he was walking home when a dark car stopped next to him with three people inside. The individual in the front passenger seat asked Lee if he had any marijuana and if he was a Gangster Disciple. Lee answered "no" to both questions, and the individual in the front passenger seat, who Lee later identified as Smith, opened fire and hit Lee in his side.

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

¶ 8      Wayne Spears testified that on the same day in question he returned to his home on South Lowe in Chicago, Illinois, and said hello to three people standing outside the building. From his kitchen, Spears heard two gunshots. He ran to the front of the house and looked out the window to see that one of the three individuals who had been standing outside, Lamar Eckstine, had been shot in the head and abdomen. Eckstine died as a result of his gunshot wounds.

¶ 9      Brian Treadwell testified that on the same day, he was walking in an alley near 117th and Halsted in Chicago, Illinois when a car with three individuals inside stopped next to him. The man seated behind the driver asked Treadwell whether he had any marijuana. Treadwell did not respond and the man asked again. Treadwell turned to run when the man in the backseat produced a handgun and shot at Treadwell, hitting him in the abdomen. Treadwell identified Washington as the shooter, but was unable to identify the two other people in the car.

¶ 10     Washington pled guilty to his involvement in the offenses and received a sentence of 26 years' imprisonment. He testified that he was responsible for all three shootings and that he had been looking to avenge a fellow gang member's death. Washington did not know the driver, but knew he was a fellow member of the Black Disciples. He never asked the driver to slow the car for any of the shootings. Upon his arrest, Washington claimed that two members of a rival gang were with him in the car. He eventually implicated Smith and defendant, although at trial he reversed course, claiming he only implicated Smith and defendant because the police forced him to do so.

¶ 11     Washington gave a videotaped statement to police, which he also disavowed at trial. In that statement, he said that he, Smith, and defendant were selected to shoot rival gang members in exchange for drugs and money. Defendant drove while Smith and Washington had handguns. He

stated that he was responsible for one of the shootings, and Smith was responsible for the other two.

¶ 12    Defendant gave a videotaped statement to police that he drove the vehicle involved in the shooting while Smith and Washington rode as passengers. At trial, defendant testified that he did not know Smith and Washington were armed when he agreed to drive them around. After the first shooting, defendant was shocked but he complied when he was instructed to drive away. He testified that he did not want to continue driving, but he was ordered to at gunpoint. He admitted he did not make that claim during his videotaped statement, though he claimed he reported that fact to officers prior to his videotaped statement. Defendant moved to DuPage County, Illinois after the shootings. He denied doing so to evade the police, but he admitted that he never reported the offenses because he feared for his and his family's safety.

¶ 13    The jury acquitted defendant of the initial shooting of Lee, but found him guilty by accountability of the subsequent murder of Eckstine and shooting of Treadwell. On direct appeal, defendant argued that: (1) the trial court failed to comply with Supreme Court Rule 431(b); (2) that trial counsel provided ineffective assistance by advancing a compulsion defense at trial even though compulsion is a prohibited defense in first degree murder cases; (3) that the State improperly impeached Washington with the factual basis from his guilty plea; and (4) that the State committed prosecutorial misconduct by offering personal opinions about the credibility of witnesses and asking defendant to comment on Washington's truthfulness. We affirmed.

¶ 14    On January 29, 2013, defendant filed a *pro se* petition for postconviction relief. In it, defendant raised numerous allegations of the ineffectiveness of both trial counsel and appellate counsel on direct appeal. He also claimed that the State failed to prove him guilty beyond a

reasonable doubt. One of defendant's claims was that appellate counsel failed to argue that defendant received a disparate sentence where Smith received a sentence of 15 years and Washington received a sentence of 26 years, even though both of them were identified as the actual shooters, while defendant received consecutive terms of 35 and 10 years.

¶ 15   Defendant's petition was not ruled on within the statutorily-mandated 90-day window. In fact, it was not until November 13, 2014, nearly two years after filing, that defendant's petition was docketed and counsel was appointed. Very little of substance transpired in defendant's case until December 11, 2017, when postconviction counsel retired and new postconviction counsel was assigned to the case. Approximately a year later on December 3, 2018, defendant's second postconviction counsel filed a Rule 651(c) certificate, which stated that she had consulted with defendant, examined the record, and concluded that defendant's petition adequately represented his claims and that amendments were not necessary.

¶ 16   On August 13, 2019, the State filed its motion to dismiss defendant's *pro se* petition, claiming that the petition failed to make out a substantial showing of a constitutional violation. Appointed postconviction counsel did not file a response to the State's motion.

¶ 17   On March 16, 2020, prior to the trial court hearing argument on that motion, defendant filed a *pro se* pleading titled, "Motion Pursuant to Supreme Court Rule 651(c)." That pleading claimed that defendant's postconviction counsel failed to attach any documentation to support his disparate sentencing claim, such as the sentencing transcripts and orders of commitment for both Washington and Smith. Defendant's pleading further claimed that, while postconviction counsel consulted with defendant, she never obtained any supporting documents.

¶ 18    On January 13, 2021, the trial court heard arguments on the State's motion to dismiss. It does not appear that defendant was present in person or by video. The report of proceedings reveals that the State's summary of the facts of the case and argument covered nearly 17 pages of transcript. By contrast, postconviction counsel's argument, which contained no actual argument, was 10 sentences. Six sentences consisted of a factual statement that she had filed a Rule 651(c) certificate and that she was not supplementing defendant's petition. The remainder of postconviction counsel's argument was to say:

> "You already know the issues that are within the petition. They're ineffective assistance of trial and appellate counsel, insufficiency of the evidence. There was the jury instruction and that there was a disparate sentence with his co-defendants so I'm standing on his petition. I'm asking for a hearing based on what Mr. Anderson has presented to the court and I'm agreeing with."

¶ 19    Defendant's case was continued for a ruling. In the meantime, on March 31, 2021, defendant filed another "Motion Pursuant to Supreme Court Rule 651(c)." His pleading reiterated that postconviction counsel had attached no documentation to support his disparate sentencing claim and cited to case law regarding disparate sentencing. Defendant also claimed that his sentence was unconstitutional under the Eighth Amendment of the United States Constitution and the Proportionate Penalties Clause of the Illinois Constitution based on the fact that defendant received a *de facto* life sentence and was 18 at the time of the offense. Defendant claimed that he was not the principal offender and that "the surrounding circumstances of the crime reflect a transient an[d] unfortunate immaturity, and that it [*sic*] has never demonstrated that he possesses irretrievable depravity or irreparable corruption." Defendant attached two articles to his pleading

related to emerging adults and brain development. One was titled "Emerging Adulthood and the Criminal Justice System: #Brainnotfullycooked #Can'tadultyet #Yolo." That article asserted that modern magnetic resonance imaging (MRI) studies have shown that behavioral and cognitive development occurs throughout emerging adulthood and that brain maturation continues into one's twenties. It also claimed that "the frontal lobes, which are responsible for planning, working memory, and impulse control (i.e. activities usually termed 'executive function') are not fully developed until age twenty-five."

¶ 20 On October 21, 2021, defendant moved *pro se* to substitute postconviction counsel with another attorney. At a status date on November 5, 2021, the State pointed out defendant's request and noted that defendant was apparently unaware that postconviction counsel, his second attorney in this matter, had also retired.

¶ 21 On January 18, 2022, a third postconviction counsel appeared on behalf of defendant, and the case was continued until defendant could appear and be heard on his motion to substitute counsel. On February 15, 2022, defendant appeared and stated he still wished to be represented by appointed counsel. Defendant's third attorney stated that she believed defendant had a viable proportionate penalties claim and that she needed time to "interview his family and friends about his upbringing and establish the Miller criteria." She also stated she wanted time to obtain his school records.

¶ 22 On May 4, 2022, the trial court stated that they were there for a ruling on the State's motion to dismiss, and postconviction counsel stated she was unaware that the State's motion to dismiss had been argued. The trial court gave postconviction counsel 30 days to make sure she was "up to speed." At the next court date on June 27, 2022, postconviction counsel attempted to file a motion

for leave to file a successive postconviction petition, even though defendant's *pro se* petition was still pending. That motion asked the trial court to consider defendant's March 31, 2022 *pro se* filing regarding Rule 651(c) as a successive postconviction petition. The motion also asserted that defendant's previous postconviction counsel rendered unreasonable legal assistance by failing to amend defendant's petition with developing case law regarding emerging adults and proportionate penalties litigation that were published during her representation between November 2017 and December 2018.

¶ 23    On August 31, 2022, the trial court granted the State's motion to dismiss. The trial court's written order makes clear that it considered defendant's claims that were contained in his additional *pro se* pleadings regarding Rule 651(c). Defendant filed a notice of appeal on September 6, 2022. On October 4, 2022, the trial court denied defendant's motion for leave to file a successive petition.

¶ 24                                    II. ANALYSIS

¶ 25    The Act provides a mechanism by which a defendant may raise a collateral attack against his or her conviction based on a claim of actual innocence or where there was a substantial denial of his or her rights under the Constitution of the United States, the State of Illinois, or both. 725 ILCS 5/122-1 *et seq* (West 2012). The purpose of postconviction proceedings is to allow inquiry into constitutional issues involved in the original conviction and sentence that have not been, and could not have been, adjudicated previously on appeal. *People v. Buffer*, 2019 IL 122327, ¶ 12.

¶ 26    The Act sets out a three-stage process for the adjudication of postconviction petitions. *Buffer*, 2019 IL 122327, ¶ 45. At the first stage the trial court is required to determine whether a petition is "frivolous or patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2012); *Buffer*,

2019 IL 122327, ¶ 45. A petition is frivolous or patently without merit when it has no arguable basis in law or in fact. *People v. Hodges*, 234 Ill. 2d 1, 16 (2009).

¶ 27    If the trial court does not dismiss the petition as frivolous or patently without merit, the petition advances to the second stage. *People v. Edwards*, 197 Ill. 2d 239, 245 (2001). Counsel is appointed to represent the defendant, if necessary, and the State is permitted to file responsive pleadings. *Edwards*, 197 Ill. 2d at 245; 725 ILCS 5/122-4 (West 2012); 725 ILCS 5/122-5 (West 2012). At the second stage, the trial court must determine whether the petition and any accompanying documentation make a substantial showing of a constitutional violation. *Edwards*, 197 Ill. 2d at 246. The second stage tests the legal sufficiency of the petition, and courts may not engage in fact-finding or address issues of credibility. *People v. Domagala*, 2013 IL 113688, ¶ 35. All well-pleaded facts not positively rebutted by the trial record are construed as true. *People v. Pendleton*, 223 Ill. 2d 458, 473, (2006). Thus, at the second stage, the question is whether the allegations, if proven at a third-stage hearing, would entitle a defendant to relief. *People v. Sanders*, 2016 IL 118123, ¶ 31.

¶ 28    In postconviction cases, there is no constitutional right to counsel. *People v. Addison*, 2023 IL 127119, ¶ 19. Instead, the right to counsel is provided by statute, and defendants are only entitled to a "reasonable level of assistance," which is less than that afforded by the federal and state constitutions. *Id*. This distinction is a rational one because trial counsel plays a different role than postconviction counsel. *Id*. At trial, counsel acts as a shield to protect a defendant from being stripped of the presumption of innocence. *Id*. But defendants in a postconviction posture have already been stripped of their presumption of innocence and have generally failed to obtain relief on direct appeal. *Id*. Thus, postconviction counsel is meant not to protect a defendant from the

prosecutorial forces of the State, but to shape defendants' claims into the proper legal form, and present those claims to the court. *Id*.

¶ 29    The Act contemplates that the attorney appointed to represent an indigent defendant would consult with him either by mail or in person, ascertain his alleged grievances, examine the record of the proceedings at trial, and then amend the *pro se* petition so that it would adequately present the defendant's constitutional claims. *People v. Owens*, 139 Ill. 2d 351, 358-59 (1990). The Act cannot serve its purpose properly unless the attorney appointed to represent an indigent defendant ascertains the basis of his complaints, shapes those complaints into appropriate legal form and presents them to the court. *Id*. at 359.

¶ 30    To ensure that defendants receive reasonable assistance of counsel, Rule 651(c) provides:

"The record filed in that court shall contain a showing, which may be made by the certificate of petitioner's attorney, that the attorney has consulted with petitioner by phone, mail, electronic means or in person to ascertain his or her contentions of deprivation of constitutional rights, has examined the record of the proceedings at the trial, and has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." Ill. S. Ct. R.651(c) (eff. July 1, 2017).

¶ 31    Every appointed attorney that represents a defendant in a postconviction matter need not file a Rule 651(c) certificate. See *People v. Smith*, 2022 IL 126940, ¶¶ 29-33. When postconviction counsel does not complete the few duties imposed by Rule 651(c), the limited right to counsel conferred by the Act becomes illusory. *People v. Schlosser*, 2017 IL App (1st) 150355, ¶ 44. Compliance with Rule 651(c) is mandatory, but once postconviction counsel files a Rule 651(c) certificate, a rebuttable presumption of reasonable assistance arises. *Addison*, 2023 IL 127119,

¶ 21. The defendant bears the burden of overcoming that presumption by showing that postconviction counsel did not substantially comply with the strictures of the rule. *Id*. A defendant may do so by, among other things, demonstrating that postconviction counsel did not make all the necessary amendments to the *pro se* petition. *Id*. This includes making amendments that are necessary to overcome procedural bars. *Id*. We review the dismissal of a second-stage petition, and issues concerning the interpretation of a supreme court rule, *de novo*, affording no deference to the trial court. *Id*. at ¶ 17.

¶ 32    Defendant argues that the trial court erred in finding that he failed to make a substantial showing of a constitutional deprivation regarding his proportionate penalties claim. He also argues that he received unreasonable assistance of postconviction counsel where counsel failed to amend defendant's petition with supporting documentation for his proportionate penalties and disparate sentencing claims. Finally, he claims that postconviction counsel failed to amend his petition to allege ineffective assistance of appellate counsel for failing to raise an insufficiency argument on direct appeal, which would have remedied the problem that defendant's insufficiency argument is not a cognizable postconviction claim. As we explain below, defendant's unreasonable assistance of counsel claims are dispositive and we need not reach his first argument regarding the merits of his petition.

¶ 33    The filing of the Rule 651(c) certificate created a rebuttable presumption that defendant's second postconviction counsel consulted with defendant about his contentions, examined the record, and made any necessary amendments to defendant's petition. *Addison*, 2023 IL 127119,

¶ 21. Thus, the question becomes whether anything in the record rebuts that presumption and shows that postconviction counsel did not substantially comply with Rule 651(c). We address defendant's unreasonable assistance claims in turn.

¶ 34                              A. Proportionate Penalties

¶ 35    Concerning the allegation of unreasonable assistance with respect to defendant's proportionate penalties claim, defendant's third postconviction counsel stated that she believed defendant had a viable proportionate penalties claim. She told the trial court she wanted time to conduct some interviews and obtain defendant's school records, but, like defendant's first two attorneys, never amended defendant's petition with any information that might have been garnered from that investigation. Given the record, there is no way to know if defendant's attorneys failed to uncover additional supporting information and attach it, or if they did uncover it and decided not to attach it because it did not aid defendant's claim. Without something in the record to affirmatively rebut the Rule 651(c) presumption, we may presume that postconviction counsel made an effort to obtain additional support and could not do so. *People v. Kirk*, 2012 IL App (1st) 101606, ¶ 25 (quoting *People v. Johnson*, 154 Ill. 2d 227, 241 (1993)) ("In the ordinary case, a trial court ruling upon a motion to dismiss a postconviction petition which is not supported by affidavits or other documents may reasonably presume that postconviction counsel made a concerted effort to obtain affidavits in support of the postconviction claims, but was unable to do so."). Rule 651(c) also does not require postconviction counsel to make a comprehensive recounting of his or her efforts. *People v. Jones*, 2011 IL App (1st) 092529, ¶ 24. Thus, without more, we do not find that defendant received unreasonable assistance of counsel on this basis alone.

¶ 36                               B. Disparate Sentencing

¶ 37    Likewise, regarding defendant's allegation of unreasonable assistance regarding his disparate sentencing claim, the record does not rebut the presumption created by the Rule 651(c). While arbitrary and unreasonable sentencing disparities between the sentences of similarly situated co-defendants are impermissible, a mere disparity of sentences by itself does not establish a constitutional violation. *People v. Caballero*, 179 Ill. 2d 205, 216 (1997). "A difference in sentences may be justified by the relative character and history of the co-defendants, the degree of culpability, rehabilitative potential, or a more serious criminal record." *People v. Willis*, 2013 IL App (1st) 110233, ¶ 127. However, a sentence imposed on a co-defendant who pleaded guilty as part of a plea agreement does not provide a valid basis of comparison to a sentence entered after trial and dispositional concessions are properly granted to defendants who plead guilty when the interest of the public in the effective administration of criminal justice would be served. *Caballero*, 179 Ill. 2d at 217-18. Smith and Washington pled guilty, but without any information about the details and circumstances of their plea agreements, if any, their criminal histories, and their sentencing hearings, it is impossible to know if postconviction counsel failed to locate relevant information and attach it, or if it was located and was not attached because it was not helpful to defendant's claim. Accordingly, defendant did not receive unreasonable assistance of counsel on this basis alone.

¶ 38                             C. Sufficiency of the Evidence

¶ 39    Defendant lastly argues that postconviction counsel was unreasonable for failing to amend his petition to allege that appellate counsel was ineffective for failing to make a sufficiency of the evidence argument. Defendant's *pro se* petition only claimed that the State failed to prove him

guilty beyond a reasonable doubt, which is not a cognizable postconviction claim. 725 ILCS 5/122-1 (West 2012).

¶ 40    *Addison* is instructive here. In *Addison*, the defendant filed a *pro se* petition alleging 15 different issues, 14 of which involved allegations of the ineffectiveness of appellate counsel for failing to raise the issue on direct appeal. *Addison*, 2023 IL 127119, ¶ 7. The defendant's postconviction counsel amended the defendant's petition to include only five claims. *Id*. at ¶ 24. Each one of the claims raised in the amended petition could have been raised on direct appeal, and the amended petition removed the claims that appellate counsel was ineffective. *Id*. The supreme court held that postconviction counsel not only failed to make the necessary amendments to put the defendant's claims in the proper form, but she eliminated the necessary allegations of ineffective assistance of appellate counsel that defendant had included, making the petition worse. *Id*. at ¶¶ 24-25. Thus, postconviction counsel provided unreasonable assistance. *Id*. at ¶ 25.

¶ 41    *People v. Turner*, which preceded *Addison*, is also highly instructive. In *Turner*, the defendant's *pro se* petition alleged a number of claims that could have been raised on direct appeal, and thus were waived unless they were framed in the context of ineffective assistance of appellate counsel. *People v. Turner*, 187 Ill. 2d 406, 412-13 (1999). The supreme court reasoned that postconviction counsel could have avoided the waiver issue by making a routine amendment framing the defendant's claims as ineffective assistance of appellate counsel. *Id*. at 413. For that reason, among others, the supreme court held that counsel provided unreasonable assistance. *Id*. at 413-14.

¶ 42    The Rule 651(c) certificate filed in this case asserted that amendments were not necessary for the proper presentation of defendant's claims. But defendant's petition contained a claim that

is not cognizable by the Act which would have been easily fixed by a simple amendment alleging ineffective assistance of appellate counsel. Thus, amendments clearly *were* necessary to shape defendant's claim into one capable of relief under the Act. Similar to *Turner*, postconviction counsel failed to make a routine amendment that would have avoided the problem that a sufficiency of the evidence claim is not a cognizable postconviction claim.

¶ 43     The State contends that postconviction counsel argued that appellate counsel was ineffective for failing to make a sufficiency of the evidence argument and that the trial court considered the issue in its ruling, and therefore, the lack of amendment is of no consequence. However, neither of those factual assertions is true. Postconviction counsel's argument at the hearing on the motion to dismiss was really no argument at all, and counsel did not even specify that appellate counsel was ineffective for failing to argue sufficiency of the evidence. What counsel said was, "You already know the issues that are within the petition. They're ineffective assistance of trial and appellate counsel, insufficiency of the evidence. There was the jury instruction and that there was a disparate sentence with his co-defendants so I'm standing on his petition."

¶ 44     More importantly, the trial court did not consider defendant's sufficiency of the evidence in the context of ineffective assistance of appellate counsel. Instead, the trial court agreed with the State that insufficiency of the evidence was not a cognizable postconviction claim and determined that defendant's claim failed as a matter of law. In other words, defendant's claim was rejected for the identical reason that now persuades us that defendant did not receive the reasonable assistance of counsel—postconviction counsel failed to shape defendant's claim and present it in a proper form, one of the core duties of Rule 651(c). Ill. S. Ct. R.651(c) (eff. July 1, 2017); *Addison*, 2023 IL 127119, ¶ 19.

¶ 45    While the trial evidence against defendant was strong, we do not concern ourselves with the merits of defendant's petition when evaluating postconviction counsel's compliance with Rule 651(c). *Addison*, 2023 IL 127119, ¶ 33. "[W]hen postconviction counsel does not fulfill his or her duties under Rule 651(c), remand is required 'regardless of whether the claims raised in the petition had merit.' " *Addison*, 2023 IL 127119, ¶ 33 (*quoting People v. Suarez*, 224 Ill. 2d 37, 47 (2007)).

¶ 46    The issue is thus not whether defendant suffered prejudice as a result of the failure to amend his petition to allege ineffective assistance of appellate counsel. The issue is that postconviction counsel's failure to make a trivial, routine amendment, despite claiming to have made all necessary amendments, rebuts the presumption that postconviction counsel substantially performed the duties contemplated by Rule 651(c). If none of the three attorneys that represented defendant during the pendency of this matter could make such a simple amendment to correct such an obvious fault, we have no assurance that defendant's attorneys performed the duties required by the Act.

¶ 47    It is worth noting that, excluding the two years it took for defendant's petition to be docketed for second-stage proceedings, nearly eight years passed before defendant's petition was dismissed. Defendant's petition was docketed on November 13, 2014, and it was dismissed on August 31, 2022. In that time, defendant had three attorneys. Not a single amendment was made to his *pro se* petition. No response was filed to the State's motion to dismiss. Indeed, postconviction counsel's oral response to the motion to dismiss contained no actual argument or discussion of facts. Instead, it contained a statement that counsel had filed a Rule 651(c) certificate, that she was not making any amendments, and a perfunctory recitation of defendant's claims.

¶ 48    Given all this, the fact that defendant had to wait a decade for a disposition of his petition is worthy of consternation. We are compelled to wonder: how did it take 2,849 days for

postconviction counsel to do nothing? "[T]here is merit to the cliché that justice delayed is justice denied." *People v. Wasilewski*, 66 Ill. App. 3d 1, 5 (1978).

¶ 49    Given our holding regarding defendant's unreasonable assistance claims, we need not reach his argument that he made a substantial showing of a constitutional violation with his proportionate penalties claim. "The purpose underlying Rule 651(c) is not merely formal. It is to ensure that all indigents are provided proper representation when presenting claims of constitutional deprivation under the [Act]. [Citation omitted.] The fulfillment of this design would not be encouraged were we to ignore the rule's nonobservance in those cases appealed to this court." *Addison*, 2023 IL 127119, ¶ 33 (*quoting Suarez*, 224 Ill. 2d at 51). "It is inappropriate to consider the merits of the claims in the petition when counsel has not complied with Rule 651(c) by shaping the claims into the appropriate form." *Addison*, 2023 IL 127119, ¶ 42.

¶ 50    All defendants are entitled to have postconviction counsel comply with the limited duties of Rule 651(c) before the merits of their petitions are determined. *Addison*, 2023 IL 127119, ¶ 37. Given that the record reflects that postconviction counsel did not do what is required—things counsel claimed to have done—it would make little sense to evaluate the merits of defendant's claim until he has received the representation to which he is entitled.

¶ 51                                      III. CONCLUSION

¶ 52    For the above reasons, we reverse the judgment of the trial court dismissing defendant's second-stage petition for postconviction relief and remand for further second-stage proceedings consistent with the Act and Rule 651(c).

¶ 53    Reversed and remanded.